COMMONWEALTH *vs.* EDWARD P. CORLISS, JR.

Essex.    September 13, 1976. — November 2, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Practice, Criminal,* Charge to jury.  *Evidence,* Conflicting statements
of witness, Relevancy and materiality.

There was no merit to a criminal defendant's contention that the
    judge's preliminary instructions to the jury pool and his charge to
    the jury at the conclusion of trial unfairly stressed the importance
    of the grand jury indictment as indicative of the defendant's guilt.
    [267-268]
Where there was an inconsistency between testimony of a witness called
    by the Commonwealth in a criminal case and a previous statement
    made by him to the prosecutor, there was no error in allowing the
    prosecutor to examine the witness concerning the prior inconsistent
    statement.  [268-269]
At a criminal trial, there was no error in allowing the prosecutor to
    question the defendant as to details concerning his escape from a
    forestry camp where his whereabouts following the escape and his
    physical appearance were relevant to an assessment of the testimony
    of certain witnesses and to his financial condition at the time of the
    crime.  [269]

INDICTMENT found and returned in the Superior Court
on May 15, 1972.

The case was tried before *McGuire,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Malvine Nathanson* for the defendant.

*Michael T. Stella, Jr.,* Assistant District Attorney (*John
C. Doherty,* Assistant District Attorney, with him) for
the Commonwealth.

REARDON, J.   The defendant was tried on an indictment
charging murder in the first degree and, having been con-
victed of murder in the second degree, was sentenced to

a term of life imprisonment to be served after a sentence then being served. The case was taken under G. L. c. 278, §§ 33A-33H. The defendant has argued three assignments of error.

No good purpose would be served by an extensive recital of the facts. The case arose from the killing of one of the proprietors of a small variety store in Salisbury on the evening of November 6, 1971. The defense lay largely in a claim that the murder was perpetrated by the defendant's brother-in-law who testified against the defendant.

1. In the first assignment the defendant argues that the judge's preliminary instructions to the jury pool on the effect of an indictment placed "greater significance on the import of grand jury action than is permissible [and] destroyed the presumption of innocence and deprived [the] defendant of his right to a jury verdict based solely on the evidence." It is further argued that the judge told the jury pool that the Commonwealth only presented evidence to the grand jury "sufficient to establish that a crime has been committed and that there is reasonable probability to believe that the defendant in fact committed that crime." It is also argued that the judge's instructions carried the meaning that the indictment was strong and substantial evidence of the defendant's guilt. We have said on a number of occasions that such instructions are to be considered in their entirety and not on the basis of limited or isolated portions. *Commonwealth* v. *Pinnick,* 354 Mass. 13, 15 (1968). *Commonwealth* v. *Aronson,* 330 Mass. 453 (1953). *Commonwealth* v. *Shea,* 323 Mass. 406, 416 (1948). In this instance the judge gave the prospective jurors an extensive set of instructions as they first came together. These instructions are some thirty-two pages in length. In them he referred to the grand jury as an investigatory body and stressed that an indictment "is nothing but a means by which we start the operation on the criminal side of the Court to accuse someone of a crime." He emphasized the necessity of fairness and impartiality on the part of jurors and the fact that no particular significance was to be attached to the indictment. The purpose

of the instructions which the judge delivered was to indicate to the prospective jurors what their task would be and in what frame of mind they should enter upon the responsibility of giving the defendant a fair and impartial trial. In his final charge to the jury who had been selected to try the case he repeated that the indictment was not evidence, and elaborated on the defendant's presumption of innocence. From a reading of the instructions to the jury pool and of the charge at the conclusion of trial, there can be no doubt that the function of the indictment was properly explained and, assuming average intelligence on their part, the jurors could not have been confused or prejudiced by the instructions and the charge. We see no merit in this assignment of error.

2. Nor do we find any impropriety in the examination by the prosecutor of a witness whom he had called concerning a prior inconsistent statement allegedly made by the witness. The witness, who had known the defendant for twenty-three years, had given the defendant his gun in September of 1971. On examination, he was unable to state that an exhibit in the case resembled the gun which he had given the defendant. The prosecutor then asked the witness whether the witness and he had had a conversation in the court house relative to the exhibit earlier on the day when the witness was on the stand and whether, in view of that, he could now say that the gun was similar in appearance to the one he had given the defendant. There was objection to the question by the defendant. At a bench conference the prosecutor informed the judge that the witness had given him a story earlier that day different from the one he had testified to concerning the similarity of the weapon he had given the defendant and the gun which was an exhibit in court. After the bench conference the witness admitted that the exhibit was similar to the gun given to the defendant months earlier. The question raised by the defendant was whether this testimony violated the rules governing the admission of evidence. In our view it did not. As the Commonwealth points out, we said in *Commonwealth* v. *White*, 367 Mass. 280, 284 (1975),

"There is nothing improper in interviewing a witness before trial, or, subject to the judge's discretion, in cross-examining a witness concerning discrepancies between his in-court and out-of-court statements. Indeed, where the witness is one's own, such questions may be a prerequisite to the admission of prior inconsistent statements for the purpose of impeaching that witness." G. L. c. 233, § 23. *Commonwealth* v. *LaFrance,* 361 Mass. 53 (1972). That statement governs this situation and we reaffirm it. See *Matter of United States,* 286 F.2d 556 (1961), reversed in *Fong Foo* v. *United States,* 369 U.S. 141 (1962).

3. Complaint is lodged by the defendant about alleged extensive and irrelevant questioning by the prosecutor on details of his escape from the "Warwick Forestry Camp." We see no error here. The defendant first brought out the fact that he had escaped from the camp, and the prosecutor on cross-examination proceeded to use the date of the escape as a launching pad for questions having to do with both the defendant's whereabouts following the escape and his personal appearance, with particular reference to his moustache and sideburns. The evidence was relevant, for his physical appearance was of importance in any assessment which the jury might make of the testimony of certain witnesses, and his peregrinations following his escape were similarly important in any consideration of his financial condition prior to the attempt to rob the variety store.

4. Consonant with our duty under G. L. c. 278, § 33E, we have reviewed the transcript of this trial which was carefully and patiently conducted by the judge and we see no reason to make any change in its ultimate outcome.

*Judgment affirmed.*