COMMONWEALTH *vs.* ERNEST MOFFETT.

Suffolk. January 7, 1981. — March 24, 1981.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Constitutional Law,* Assistance of counsel. *Due Process of Law,* Assistance of counsel, Appeal. *Practice, Criminal,* Assistance of counsel, Appeal, Instructions to jury, Examination of jurors, Reading of indictment. *Jury and Jurors. Identification. Assault and Battery. Error, Harmless.*

Guidelines as to the duties of appointed counsel in representing an indigent criminal defendant on an appeal which counsel believes is frivolous. [207-209]

Where counsel appointed to represent an indigent criminal defendant on an appeal which counsel believed was frivolous acted in accordance with the procedure outlined in *Anders* v. *California,* 386 U.S. 738 (1967), the defendant was not denied his Fourteenth Amendment right to effective appellate representation even though counsel's actions did not comply with the guidelines set forth in this opinion as to the duties of appointed counsel in such circumstances. [203-209]

At a criminal trial, the judge's instructions with respect to the evaluation of identification testimony were adequate even though he omitted a portion of the model charge set forth in *Commonwealth* v. *Rodriguez,* 378 Mass. 296 (1979). [211-212]

At the trial of a defendant charged with assault and battery by means of a dangerous weapon, a sidewalk brick, the judge's instruction that "[i]t would not be necessary that [the defendant] actually use the brick in order to be guilty . . . . It would be enough if it were in his presence and he made an assault or a threat to [use it]," although erroneous, did not, in the circumstances and when taken in conjunction with his other instructions, constitute reversible error. [212-213]

A defendant was not denied effective assistance of counsel by his attorney's failure to move to suppress an identification of the defendant by the victim while the defendant was seated in a police cruiser shortly after the crime where the attorney could reasonably have concluded that a motion to suppress would have little or no likelihood of success. [213-214]

A black defendant charged with the armed robbery and assault and battery of a white man was not denied effective assistance of counsel by

his attorney's failure to request a voir dire on the issue of racial bias in the absence of circumstances showing that the defendant was a special target of racial prejudice. [214-215]

A defendant was not prejudiced by the judge's reading to the jury pool an indictment which was then severed from the remaining indictments on which the defendant was subsequently tried where the judge's instructions to the jury pool and charge at the conclusion of the trial made clear that the jury were not to consider the severed indictment. [215]

This court is not empowered to reduce a sentence for a conviction other than one of murder unless the sentence constitutes cruel and unusual punishment or is not authorized by statute. [216]

INDICTMENTS found and returned in the Superior Court Department on August 17, 1979.

The cases were tried before *Paquet*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Casimir S. Lopata* for the defendant.

*M. Catherine Huddleson*, Legal Assistant to the District Attorney (*Kevin Connelly*, Assistant District Attorney, with her) for the Commonwealth.

*Ernest Moffett*, pro se, submitted a brief.

HENNESSEY, C.J.   In this case we decide for the first time what procedures should be adopted to implement the constitutional principle of *Anders* v. *California*, 386 U.S. 738 (1967). To that end, we consider the nature and extent of appointed counsel's duty to represent an indigent criminal defendant on appeal, when counsel believes the appeal is frivolous. We also conclude, upon examining the merits of the issues raised on this appeal, that there is no reversible error, and we affirm the judgments.

The defendant, Ernest Moffett, appeals from his convictions of armed robbery and of assault and battery by means of a dangerous weapon. The attorney appointed to represent the defendant on appeal to the Appeals Court filed a motion to withdraw his appearance, asserting that "[a]fter interviews with the defendant, the trial counsel and with

the prosecuting attorney, and a review of the transcript and trial court record counsel has determined that based on the facts and applicable law there are no appealable issues . . . ." A single justice of the Appeals Court denied the motion to withdraw. Appointed counsel then filed a brief styled "Appellant Counsel's Brief Pursuant to *Anders* v. *California,* 386 U.S. 738 (1967)," in which he discussed three issues that "might arguably support the appeal" but maintained that "after careful review of the record and relevant case law, . . . these issues are without merit for the reasons stated herein." Counsel again requested permission to withdraw. A copy of this brief was sent to the defendant and the Commonwealth. When it became apparent that the *Anders* issue had to be confronted, we transferred the case to this court on our own motion.

Contending that appointed counsel did not have his client's "best wishes in mind when the brief was submitted," the defendant moved to strike appointed counsel's brief and submitted a brief in his own behalf. He also filed a motion requesting the appointment of a named attorney to replace appointed counsel. Appointed counsel filed a reply brief, to which the defendant replied. The Commonwealth has also submitted a brief.

Before turning to the merits of the defendant's appeal, we discuss the right of an indigent defendant to the assistance of counsel on appeal.

1. *The Indigent's Right to Counsel on Appeal.*

Relying both on the due process and the equal protection clauses of the Fourteenth Amendment to the United States Constitution, the Supreme Court gradually has broadened an indigent's right of access to appellate courts, with a view toward ensuring an indigent criminal appellant treatment substantially equal to that afforded a nonindigent. See *Griffin* v. *Illinois,* 351 U.S. 12, 19-20 (1956); *Eskridge* v. *Washington State Bd. of Prison Terms & Paroles,* 357 U.S. 214, 215-216 (1958); *Burns* v. *Ohio,* 360 U.S. 252, 257 (1959); *Smith* v. *Bennett,* 365 U.S. 708, 713-714 (1961);

*Lane* v. *Brown,* 372 U.S. 477 (1963); *Draper* v. *Washington,* 372 U.S. 487, 499-500 (1963).

In *Douglas* v. *California,* 372 U.S. 353 (1963), the Court held that an indigent criminal defendant is constitutionally entitled to the assistance of counsel on a first appeal granted as of right by the State. In so holding, the Court condemned procedures "where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself." *Id.* at 358.

Against this background the Supreme Court decided *Anders* v. *California,* 386 U.S. 738 (1967). In *Anders,* counsel appointed to represent an indigent on appeal informed the court that he would not file a brief because in his opinion there was no merit to the appeal. The California court allowed the defendant to file a brief in his own behalf but denied his request for a new attorney, and after examining the record affirmed the conviction. This procedure ultimately was challenged by a habeas corpus petition in the State court, which found the petition to be "without merit." *Id.* at 743. The Supreme Court concluded that California's procedure failed to satisfy "[t]he constitutional requirement of substantial equality and fair process," because it did not furnish the defendant with counsel "act[ing] in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae. Id.* at 744. The Court then outlined a procedure it deemed would "assure penniless defendants the same rights and opportunities on appeal — as nearly as is practicable — as are enjoyed by those . . . able to afford . . . private counsel." *Id.* at 745.

"[I]f counsel finds [the] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indi-

gent and time allowed him to raise any points that he chooses; the court — not counsel — then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal." *Id.* at 744.

Although meant to resolve the tension between an indigent defendant's right to a counseled appeal and counsel's desire to withdraw because he finds the appeal frivolous, the *Anders* procedure has been criticized not only as cumbersome and impractical, but also as insufficiently responsive both to the position of the indigent and to the ethical concerns of appointed counsel. The major difficulty with the *Anders* procedure is its requirement that an attorney assume contradictory roles if he wishes to withdraw on the grounds that the appeal lacks merit.[1] He must "fil[e] a schizophrenic motion to withdraw (accompanied by a for-

---

[1] *Anders* v. *California*, 386 U.S. 738 (1967), has been interpreted as having established a distinction between appeals that are wholly frivolous and appeals that merely lack merit, with the latter being insufficient to support withdrawal of counsel. See, e.g., *Commonwealth* v. *Greer*, 455 Pa. 106, 108-109 (1974); ABA Standards for Criminal Justice, The Defense Function 4-8.3 and commentary at 4.110 (2d ed. 1980). Although we have defined a frivolous appeal as one that "not merely lack[s] merit, but would not have a prayer of a chance," *Pires* v. *Commonwealth*, 373 Mass. 829, 838 (1977), we agree with those courts and commentators who have rejected or downplayed any distinction between frivolous and meritless appeals for purposes of assessing appointed counsel's obligation under *Anders*. See *Nickols* v. *Gagnon*, 454 F.2d 467, 471 (7th Cir. 1971); *Cleghorn* v. *State*, 55 Wis. 2d 466, 475 (1972) (observing that "[w]hen applied to an appeal, any possible distinction could only be based upon a degree of possibility of reversal"); Hermann, Frivolous Criminal Appeals, 47 N.Y.U.L. Rev. 701, 705-708 (1972). At times we ourselves have equated frivolous with meritless. E.g., *Halner* v. *Commonwealth*, 378 Mass. 388, 389-390 (1979).

mal brief opposing the motion)." Doherty, Wolf! Wolf! — The Ramifications of Frivolous Appeals, 59 J. Crim. L., Criminology & Police Sci. 1, 2 (1968). This Janus-faced approach not only runs the risk of alienating and frustrating his client, who can scarcely be blamed for feeling abandoned and betrayed, but also complicates the court's review unnecessarily.

Some courts have recognized that the mere submission by appointed counsel of a request to withdraw on grounds of frivolousness may result in prejudice to the indigent defendant, and have adopted the position of disallowing such motions to withdraw. See, e.g., *State* v. *McKenney,* 98 Idaho 551 (1977); *Dixon* v. *State,* 152 Ind. App. 430, 436-437 (1972); *State* v. *Gates,* 466 S.W.2d 681, 684 (Mo. 1971). See Note, Withdrawal of Appointed Counsel from Frivolous Indigent Appeals, 49 Ind. L.J. 740, 747 (1974). Aside from the possibility of prejudice, practical administrative reasons exist for prohibiting withdrawal. If appointed counsel may move to withdraw on grounds of frivolousness, the court must determine whether the appeal is frivolous in order to rule on counsel's motion,[2] and the determination necessarily entails consideration of the merits of the appeal. As long as counsel must research and prepare an advocate's brief, he or she may as well submit it for the purposes of an ordinary appeal. Even if the appeal is frivolous, less time and energy will be spent directly reviewing the case on the merits. See *State* v. *McKenney, supra; Sanchez* v. *State,* 85 Nev. 95, 97 (1969); *Commonwealth* v. *Seville,* 231 Pa. Super. 120, 123

---

[2] Those courts allowing counsel to withdraw after filing an *Anders* brief generally follow either a one-step or a two-step procedure. Under the two-step procedure, the court first determines whether the appeal is frivolous and rules on counsel's motion to withdraw. If withdrawal is allowed, the court next reviews the case on the merits, with the defendant either proceeding on his own behalf or with a substitute attorney. See, e.g., *State* v. *Croom,* 165 Conn. 371 (1973); *Commonwealth* v. *Liles,* 467 Pa. 263 (1976). Under the one-step procedure, the court rules on defense counsel's motion to withdraw and reviews the merits of the appeal in one proceeding. See, e.g., *State* v. *Theobald,* 78 Wash. 2d. 184 (1970); *Cleghorn* v. *State,* 55 Wis. 2d 466, 473-474 (1972).

(1974) (Cercone, J., dissenting). If the appeal is not frivolous, but rather arguable on the merits, refusing to permit withdrawal would also obviate any need to substitute counsel to argue the appeal. Cf. *People* v. *Wende*, 25 Cal. 3d 436, 442 n.3 (1979) (requiring appointment of substitute counsel if original counsel characterizes appeal as frivolous but the court decides it is arguable on the merits).

We thus conclude that appointed counsel should not be permitted to withdraw solely on the ground that the appeal is frivolous or otherwise lacking in merit. Cf. ABA Standards for Criminal Justice, The Defense Function 4-8.3 (2d ed. 1980) ("Appellate counsel should not seek to withdraw from a case solely on the basis of his or her own determination that the appeal lacks merit"); ABA Standards for Criminal Justice, Criminal Appeals 21-3.2 (2d ed. 1980).

We recognize that appointed counsel, as well as retained counsel, has the professional responsibility not to advance groundless contentions. See S.J.C. Rule 3:07, DR 7-102 (A) (2), as appearing in 382 Mass. 785 (1981) (prohibiting an attorney from knowingly advancing a claim "unwarranted under existing law, [unless] . . . it can be supported by good faith argument for an extension, modification, or reversal of existing law"); S.J.C. Rule 3:07, DR 2-109 (A) (2), as appearing in 382 Mass. 774 (1981), S.J.C. Rule 3:07, DR 2-110 (C) (1) as appearing in 382 Mass. 775 (1981). Concern in part that appointed counsel not be forced to compromise ethical standards has led to the judicial approval elsewhere of procedures in which counsel submits no adversary brief, but merely "a professional evaluation of the record and the points which might have been asserted as error," demonstrating the absence of merit and presenting no argument for reversal. *Nickols* v. *Gagnon*, 454 F.2d 467, 469 (7th Cir. 1971), cert. denied, 408 U.S. 925 (1972). *Currie* v. *State*, 516 S.W.2d 684 (Tex. Crim. App. 1974). The *Nickols* court reasoned that *Anders* requires that the indigent receive substantially the same assistance of counsel as if he had retained one, not that appointed counsel must argue what he would not argue for a paying client, or that he must urge reversal even if he finds no merit in the appeal. *Nickols* v. *Gagnon, supra* at 471-472.

Nonetheless, *Anders* does require appointed counsel to support his client's appeal to the fullest extent possible. Furthermore, "[e]ven when his trained judgment tells him that the client's cause on appeal is well nigh hopeless, the court-appointed counsel performs an important function by making sure that the reviewing court understands all the salient facts and all the relevant legal authorities before reaching a final decision. . . . [Appointed] counsel serves both his client and the Court by bringing all record facts to the reviewers' notice. Indeed an advocate performs a most important function when by his analysis he presents the critical issues and brings to the Court all the facts and law and is prepared to respond to questions." *Johnson* v. *United States*, 360 F.2d 844, 846 (D.C. Cir. 1966) (Burger, J., concurring).

If there is nothing to support a contention which the defendant, despite counsel's attempts to dissuade him, insists on pursuing, we think it preferable that counsel present the contention succinctly in the brief in a way that will do the least harm to the defendant's cause. See *id.* at 847; I ABA Standards, *supra*, commentary at 4.111 (suggesting that the lawyer deal with any frivolous contention "sketchily and without developing it in detail or pressing it on the court"). If appointed counsel, on grounds of professional ethics deems it absolutely necessary to dissociate himself or herself from purportedly frivolous points, counsel may so state in a preface to the brief. See I ABA Standards, *supra* at 4.111; *Sanchez* v. *State*, 85 Nev. 95, 98 (1969) (authorizing counsel to file a brief on the merits, "together with an acknowledgment that he does not believe there is merit to the appeal"). If such a preface is included, counsel must send a copy of the brief to the defendant, direct his attention to the preface, and inform him that he may present additional arguments to the appellate court within thirty days. Counsel should certify to the court that the defendant has been so notified.[3]

---

[3] A copy of the certification should be sent to the Commonwealth. Upon the defendant's filing his response with the court and service thereof on the Commonwealth, or upon the expiration of the thirty-day period

Counsel must refrain thereafter from arguing against his client, both in the brief and at oral argument.[4]

Here, appointed counsel examined the record, concluded no meritorious grounds for appeal were presented, and requested permission to withdraw. He filed a brief outlining possible arguments in favor of his client's appeal and then disposed of them by demonstrating their lack of merit. Although counsel's action does not comply with our new guidelines governing the duties of appointed counsel in the representation of indigent criminal defendants on appeal, it does seem to accord with the *Anders* procedure. Therefore, we cannot say that the defendant has been denied his Fourteenth Amendment right to effective appellate representation.

The defendant has received and responded to both counsel's brief and the Commonwealth's brief. The entire transcript is also part of the record. With sufficient information before us to dispose of this case, cf. *Commonwealth* v. *Richard*, 377 Mass. 64, 65 (1979), *Commonwealth* v. *Davis*, 364 Mass. 555, 556 (1974), we turn now to the merits of the defendant's appeal.

2. *Issues Raised on this Appeal.*

The trial evidence bearing on the issues raised on this appeal is as follows. Around 11:15 P.M. on July 11, 1979, on the steps of his home in the South End of Boston, Ralph

---

allowed the defendant to file, whichever first occurs, the Commonwealth will have thirty days to file its brief. Of course, should the appellate court find merit in any issue, whether raised by appointed counsel or by the defendant, the court on its own motion may appoint new counsel and order rebriefing and reargument.

[4] In his *Anders* brief, appointed counsel for Moffett raised three issues. The argument headings themselves suggest the brief was submitted on behalf of the Commonwealth, not the defendant:

"I. The Reading of the Third Indictment to the Jury Pool Before the Jury was Impanelled Did Not Prejudice Defendant.

"II. The Trial Judge's Jury Instructions With Respect To The Issue of Identification Satisfied The Requirements Set Forth In The *Rodriguez* Model Instructions.

"III. The Trial Judge's Jury Instructions as to the Requirement of Unanimity Were Not Confusing and Did Not Prejudice the Jury."

Horne was assaulted by two black men, beaten with a brick, and robbed of his watch, some money, and a 1950 M.I.T. class ring. Horne testified that one man, wearing a dark T-shirt with script lettering, pulled him down on the steps and held him there, while the other man, wearing a shirt of a "darkish" color, struck him with a sidewalk brick over his eye and in the back of his head. While lying on his back on the steps, Horne was able to see his attackers before he was struck, at which point his glasses were knocked off. In court, Horne identified Moffett as the man who hit him with the brick, and testified that he surrendered his ring after Moffett had said he would cut it off otherwise.

A few minutes after the attack, the police arrived. Horne described his assailants and pointed out the direction they had fled. The officers drove off in that direction and soon observed two black men fitting the description. Upon seeing the police, the men ran away together but then split up. Moffett was chased on foot, quickly caught, arrested, and handcuffed.

The officers placed Moffett in the back seat of a police cruiser and returned to the scene of the crime. Horne stepped over to the cruiser and identified Moffett as one of the two men who had assaulted him. After seeing Moffett make some "thrusting gestures," the police removed him from the cruiser, searched the back seat, and found a ring, which Horne identified as the class ring stolen from him. Horne was taken to a hospital for treatment of his injuries, and while there he identified the second assailant, whom police had captured sometime after their arrest of Moffett.

Horne positively identified Moffett at the probable cause hearing and at trial, where he testified he had been positive of his identification when he saw Moffett in the back of the police cruiser.

Moffett testified that when the police first spotted him, he had just met an acquaintance, Robert Thomas, who was robbing a young woman. Seeing the police, Moffett panicked and ran off with Thomas, who passed Horne's class ring to him. According to Moffett, one of the officers

asked Horne, "Is this the guy that attacked you?" and Horne responded only after looking at the defendant for about five minutes and asking him to say something.

In all, five issues have been raised by the defendant and appointed counsel on this appeal. None of the issues now raised were preserved below. In the absence of a proper preservation of an issue for appellate review, the applicable standard is whether there existed a "substantial risk of a miscarriage of justice." *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). *Commonwealth* v. *Daigle*, 379 Mass. 541, 549 (1980), and cases cited. After scrutiny of the issues presented and of the entire record, we see no risk of a miscarriage of justice. Even assuming all the issues are fully and properly before us, we still find no reversible error.

a. *Identification instruction.* The defendant contends that the trial judge failed to adequately instruct the jury about the possible effect of the circumstances surrounding Horne's identification shortly after the crime. Specifically, the defendant argues the judge erred in not instructing the jury on every element of the model charge set forth in *Commonwealth* v. *Rodriguez*, 378 Mass. 296, app. 310 (1979). In *Rodriguez*, we adopted the identification instructions of *United States* v. *Telfaire*, 469 F.2d 552, 558-559 (D.C. Cir. 1972), as appropriate for cases in which identification is in issue, with the qualification that "they may be modified or embellished as the evidence and allegations at trial require." *Id.* at 310-311 & n.1. Here, the judge quoted the *Rodriguez* model instructions almost verbatim, but omitted a portion calling upon the jury to scrutinize the witness's identification "with great care" if it "may have been influenced by the circumstances under which the defendant was presented . . . for identification." The influential circumstances here are alleged to have been that Moffett, while handcuffed in the police cruiser, was displayed to Horne only after one of the officers had a "conversation with Mr. Horne relative to Mr. Moffett," suggesting possible police intervention in Horne's identification.

The judge did emphasize, however, that the jury should "take into account both the strength of the identification

and the circumstances under which the identification was made." He was careful to focus the jury's attention on the arguably "troublesome aspects of identification testimony," *Commonwealth* v. *Napolitano,* 378 Mass. 599, 609 (1979), by instructing them not only on the witness's opportunity to observe at the time of the assault but also on the necessity that the identification be the product of the witness's own senses and not of the police officer's suggestion and control.[5] We think that the judge's instruction adequately covered the question of identification presented in this case. See *Commonwealth* v. *Breese,* 381 Mass. 13, 18 (1980); *Commonwealth* v. *Napolitano, supra.*

b. *Instruction on assault and battery by means of a dangerous weapon.* At one point during his instruction on assault and battery by means of a dangerous weapon (here a sidewalk brick), the judge stated that "[i]t would not be necessary that [the defendant] actually use the brick in order to be guilty . . . . It would be enough if it were in his presence and he made an assault or a threat to [use the brick]." Since the statutory offense requires not only an assault but also an intentional touching, however slight, by means of a dangerous weapon, *Commonwealth* v. *Appleby,* 380 Mass. 296, 306 (1980), this instruction was erroneous. We conclude nonetheless that, in the circumstances of this case and in conjunction with the judge's other instructions, the instruction did not constitute reversible error.

First, the battery of the victim was not contested at trial; the issue was the identity of the assailants. Second, in his instruction on joint venture, the judge stated that "if the two men, whoever they were, were working together on a common venture to rob and steal from Mr. Horne, then the act of each one would be the act of the other under the

---

[5] The judge stated in part: "Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection, the use of his own senses without a police officer saying, 'There's the man; do you identify him?' . . . [W]as this . . . identification, a product of his own senses as he used them or controlled by somebody else?"

theory [that] they were using their combined or their common efforts . . . to accomplish the fact of an armed robbery and to steal personal property from the person of the man who was being assault[ed] and robbed." The test of the propriety of a charge is the impression created by it as a whole. *Commonwealth v. Pinnick*, 354 Mass. 13, 15 (1968). Because proof that Horne had been beaten by one of his assailants was in no way controverted,[6] and because the judge stressed that under a joint venture theory "each would be equally responsible for" the acts of the other, we do not think that the charge as a whole so confused the jury as to allow them to convict the defendant without finding a touching had occurred.

c. *Claimed ineffective assistance of counsel.* The defendant claims he was denied effective assistance of counsel at trial because his attorney failed to move to suppress the victim's identification testimony or to challenge it on voir dire. He contends that the identification procedure was highly suggestive, citing *Stovall v. Denno*, 388 U.S. 293 (1967).

The victim identified the defendant within half an hour of the assault and battery. In the situation presented, suppression of the identification would not have been proper. Although the identification was the result of a one-on-one confrontation, which is generally disfavored, we have several times held permissible "showups of suspects to eyewitnesses of crimes . . . when conducted by the police promptly after the criminal event," as long as no special elements of unfairness exist. *Commonwealth v. Bowden*, 379 Mass. 472, 479 (1980), quoting from *Commonwealth v. Barnett*, 371 Mass. 87, 92 (1976), cert. denied, 429 U.S. 1049 (1977). Such a showup procedure gives the witness a chance to identify the aggressor while his memory is fresh and expedites the release of innocent suspects. *Commonwealth v. Barnett, supra.* No unfairness is shown by the

---

[6] Furthermore, Horne consistently identified Moffett as the man in the "darkish color" shirt who had attacked him with the brick while the other man, with the lettered T-shirt, held him down.

fact that the victim was asked to identify the person in the back seat of the police cruiser. See *Commonwealth* v. *Denault,* 362 Mass. 564, 565-567 (1972); *Commonwealth* v. *Bowden, supra* at 478-479.

The defendant's trial attorney could have concluded, both reasonably and rightly, that a motion to suppress the victim's identification testimony would have had little or no likelihood of success. During the trial, the attorney fully developed and argued the defense of mistaken identification. His challenge of the identification testimony by means other than a motion to suppress or voir dire was a tactical judgment[7] that was neither "manifestly unreasonable," *Commonwealth* v. *Adams,* 374 Mass. 722, 728 (1978), nor "behavior . . . falling measurably below that which might be expected from an ordinary fallible lawyer," *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974).

The defendant's remaining assertions in support of his claim that his trial counsel was ineffective may be disposed of even more readily. The defendant contends his attorney should have requested a voir dire on the issue of racial bias. But neither the mere fact that the defendant and the victim are of different races nor the bald assertion of racial tension or prejudice in Boston is enough to require that questions designed to discover racial prejudice be put to prospective jurors. See *Commonwealth* v. *Core,* 370 Mass. 369, 374-375 (1976), in which we adhered to our view that a defendant is entitled to such questions only when circumstances show he is a special target of racial prejudice.

The judge asked the jury venire the statutory questions of G. L. c. 234, § 28, including whether any juror was biased or prejudiced, and no juror so indicated. Neither the Commonwealth nor the defendant characterized the assault as a racial incident. In the absence of special circumstances, trial counsel may well have decided that specific questions

---

[7] If there is little chance of success on a motion to suppress, defense counsel may well prefer to examine identifying witnesses in front of the jury, so that those witnesses would lack any benefit of preparation that might flow from prior voir dire questioning.

about possible racial bias would have been counterproductive. See *Commonwealth* v. *Bumpus*, 365 Mass. 66, 67 (1974). Such a decision was not "manifestly unreasonable." *Commonwealth* v. *Adams, supra.* Nor is the defendant's sketchy assertion concerning the racial or ethnic composition of the venire or the petit jury indicative of either ineffective assistance of counsel or any systematic exclusion of blacks. See *Commonwealth* v. *Campbell*, 378 Mass. 680, 691-692 (1979); *Commonwealth* v. *Williams*, 378 Mass. 217, 220-223 (1979).

Finally, the defendant argues the lack of objections by his trial counsel constituted ineffective assistance of counsel. He fails to state just what his attorney failed to do or how the alleged omissions prejudiced him.[8] We conclude that with this assertion as well the defendant has not met his burden of showing he was denied the effective assistance of counsel at trial.

d. *Reading of a third indictment.* Before the fourteen jurors were empanelled, the judge read three indictments to the jury pool, two concerning the attack on Ralph Horne and a third alleging an unrelated assault on a woman with intent to rob while armed. The judge then severed the third indictment. Although it would have been preferable had the third indictment not been read, the judge made it clear that the jury were not to consider it. He also emphasized that indictments do not constitute evidence of guilt, weaken the presumption of a defendant's innocence, or lessen the Commonwealth's burden of proof. We think that "[f]rom a reading of the instructions to the jury pool and of the charge at the conclusion of the trial, there can be no doubt that the function of the indictment was properly explained and, assuming average intelligence on their part, the jurors could not have been confused or prejudiced by the instructions and the charge." *Commonwealth* v. *Corliss*, 371 Mass. 266, 268 (1976). See *Commonwealth* v. *Clifford*, 374 Mass. 293, 298-299 (1978).

---

[8] In fact, defense counsel did make several objections during the trial.

e. *Instructions on unanimity.* The judge's instructions on the necessity of reaching a unanimous verdict were adequate. See *Commonwealth* v. *Sullivan,* 354 Mass. 598, 616 (1968), cert. denied, 393 U.S. 1056 (1969).

f. *Propriety of sentence.* The judge imposed sentences of thirteen to twenty years on the armed robbery conviction and nine to ten years on the conviction of assault and battery by means of a dangerous weapon, the sentences to be served concurrently at the Massachusetts Correctional Institution at Walpole. During oral argument, counsel suggested that we consider reducing the armed robbery sentence, which he termed excessive. However, this court is not empowered to reduce a sentence for a conviction other than for one of murder, G. L. c. 278, § 33E, unless the sentence constitutes cruel and unusual punishment or is not authorized by statute, neither of which is the case here.

3. *Conclusion.* In summary, we adopt the following guidelines[9] in order to avoid the fragmentary and circuitous steps of the procedure suggested in *Anders* yet still achieve the *Anders* goal of assuring that indigent appellants receive treatment substantially equal to that enjoyed by those able to retain private counsel. Once counsel is appointed to represent an indigent criminal defendant on appeal, no withdrawal will be permitted solely on the basis of the frivolousness or meritlessness of the appeal.[10] Even if counsel has doubts about the merits of the appeal, he or she must prepare and submit a brief arguing any issues that are arguable. Counsel need not espouse unsupportable contentions insisted on by the defendant, but should present them sketchily, simply designating pertinent portions of the trial

---

[9] The subject at issue is susceptible to treatment by court rule, and we should consider formulating such a rule. Cf. *Commonwealth* v. *Soares,* 377 Mass. 461, 489 n.34, cert. denied, 444 U.S. 881 (1979).

[10] Of course, a defendant may decide to forgo an appeal after hearing his counsel's considered opinion on the appeal's groundlessness. Cf. ABA Standards for Criminal Justice, The Defense Function 4-8.3 and commentary at 4.109 (2d ed. 1980); ABA Standards for Criminal Justice, Criminal Appeals 21-3.2 (b)(i) (2d ed. 1980).

transcript and citing any relevant cases. If counsel feels ethically compelled to dissociate himself or herself from contentions presented in the brief, counsel may preface the brief with a statement that it is filed pursuant to *Anders* and to the guidelines of this case. In that event, counsel must so notify the defendant, who will have thirty days to respond should he so choose. Beyond such a preface, counsel should not inject disclaimers of personal belief in the merits of the case or otherwise argue against the defendant's interests.

Although appointed counsel acted otherwise on this appeal, as a matter of judicial economy we have resolved the merits of the appeal in this proceeding. Our independent review of the trial transcript demonstrates that the defendant was adequately represented at trial and was fairly tried.

*Judgments affirmed.*