NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-744

ADOPTION OF LARITA[1]
(and three companion cases[2]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This case involves the welfare of four girls, born in 2011, 2012, 2018, and 2019, respectively.  After trial, a Juvenile Court judge issued decrees that found the children in need of care and protection, found the mother and the father (collectively, the parents) unfit, terminated their parental rights, awarded permanent custody to the Department of Children and Families (DCF), and approved a plan for the children to be adopted by their current foster parents.  The parents appealed, and they submitted a joint brief.[3]  We affirm.

---

[1] A pseudonym.

[2] Adoption of Regan, Adoption of Mandy, and Adoption of Julie. The children's names are pseudonyms.

[3] The brief was submitted under the rubric of Commonwealth v. Moffett, 383 Mass. 201, 207-209 (1981).  See Care and Protection of Valerie, 403 Mass. 317, 318 (1988).

"While a decision of unfitness must be supported by clear and convincing evidence, a judge's findings will be disturbed only if they are clearly erroneous" (citation omitted). Adoption of Paula, 420 Mass. 716, 729 (1995). The judge made careful and detailed factual findings, none of which the parents have claimed, much less demonstrated, to be clearly erroneous. Those findings set forth the profound issues that both parents presented, especially with respect to domestic violence, which the cases reflect "may imperil a child's physical safety and psychological development." Adoption of Jacob, 99 Mass. App. Ct. 258, 262 (2021), and cases cited. Although we have long recognized how damaging the mere exposure to domestic violence can be, the children here were not only witnesses to such violence but also actual targets of it. The father committed severe and persistent physical abuse against the mother, the mother's son from a previous relationship,[4] and the girls themselves.[5] For her part, the mother rebuffed DCF's efforts to remedy such violence and in fact denied that it was occurring. While DCF also established that the parents neglected their children in other ways, such as by the deplorable state of the

---

[4] The girls' half-brother, who is not a party to these proceedings, now lives with his father.

[5] There was no evidence that the father abused the two younger girls, but they were removed from the parents directly after their birth.

2

home in which they lived, little would be gained from recounting such details given the overwhelming evidence of the parents' unfitness.

To the extent that the parents maintain that the judge did not give them due credit for positive things in their favor, we disagree. This is not a case where the judge failed to engage with "[t]roublesome facts." Compare Adoption of a Minor (No. 2), 367 Mass. 684, 688 (1975). For example, the judge credited that both parents eventually made some efforts to comply with service plan requirements designed to address the parenting and domestic violence issues, but ultimately found that such efforts were insufficient to remedy the situation.

In their joint brief, the parents argue that their fitness is established by their love for the girls. We have long recognized that a finding that a parent is unfit does not negate that parent's love for the child. See Adoption of Bianca, 91 Mass. App. Ct. 428, 432 n.8 (2017). The converse is also true; a parent's love for a child does not negate a finding of unfitness. Rather, whether a parent is fit and whether he or she loves the child are distinct issues. With respect to fitness, "[t]he inquiry . . . is whether the parents' deficiencies or limitations 'place the child at serious risk of peril from abuse, neglect, or other activity harmful to the child.'" Id., quoting Care & Protection of Bruce, 44 Mass. App.

3

Ct. 758, 761 (1998).  The judge's subsidiary findings, which are unchallenged and well supported by the record, establish that the parents are unfit and that their unfitness is likely to continue for the foreseeable future.

Of course, by itself, "[u]nfitness does not mandate a decree of termination."  Adoption of Imelda, 72 Mass. App. Ct. 354, 360 (2008).  But at the same time, it is unfair to leave children in limbo indefinitely.  See Adoption of Nancy, 443 Mass. 512, 517 (2005) ("it is only fair to the children to say, at some point, 'enough'").  With the passage of time, it becomes increasingly important that children obtain a stable, safe, and nurturing home environment.  In the case before us, the children appear to be thriving with their current foster parents who plan to adopt them all.  In the end, "[w]hile courts protect the rights of parents, 'the parents' rights are secondary to the child's best interests and . . . the proper focus of termination proceedings is the welfare of the child.'"  Adoption of Ilona, 459 Mass. 53, 61 (2011), quoting Adoption of Gregory, 434 Mass. 117, 121 (2001).  With this overarching standard in mind, we

4

discern no error in the judge's decision to terminate the parents' rights and to approve their placement plan.

                                    Decrees affirmed.

                                    By the Court (Milkey, Blake,
                                      & Sacks, JJ.[6]),

                                    *Joseph F. Stanton*

                                    Clerk

Entered:  September 20, 2023.

---

[6] The panelists are listed in order of seniority.