NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1011

ADOPTION OF JAWON (and a companion case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother appeals from decrees entered in the Juvenile Court finding her unfit and terminating her parental rights to two of her children.[2,3]  She argues, inter alia, that the children were erroneously removed from her custody without a showing that they were in immediate danger of serious abuse or

---

[1] Adoption of Aidan.  The children's names are pseudonyms.

[2] The mother's eldest child was initially a party to the care and protection petition but was dismissed after reaching the age of eighteen.

[3] The father signed a stipulation voluntarily terminating his parental rights to the children and is not a party to this appeal.

neglect, and thus the subsequent determinations of unfitness and termination of parental rights were erroneous.[4]  We affirm.[5]

Background.  Following eight, nonconsecutive days of trial in March through July of 2023, the judge issued comprehensive findings of fact and conclusions of law, which find ample support in the record.[6]  Six witnesses testified at trial and seventy-seven exhibits were admitted in evidence.

The two subject children in this matter are Jawon, born in 2016, and Aidan, born in 2018.  Jawon is on the autism spectrum and has received early intervention and special education services.  Aidan likewise has received early intervention services and language, speech, and occupational therapy.

The mother is a Hispanic woman who was forty-eight years old at the start of trial.  She has had interactions with the Department of Children and Families (DCF) since 2010 and a

---

[4] Counsel for the mother filed the appellant brief pursuant to Care & Protection of Valerie, 403 Mass. 317, 318 (1988), and Commonwealth v. Moffett, 383 Mass. 201, 208 (1981).

[5] Per the joint request of the parties, this case was submitted on briefs and without oral argument.  See Mass. R. A. P. 22 (f), as appearing in 481 Mass. 1651 (2019).

[6] General Laws c. 119, § 51A, reports were admitted in evidence solely "to set the stage," and G. L. c. 119, § 51B, reports were considered by the judge "for statements of fact . . . not for purposes of diagnosis, prognosis and evaluation."  See Custody of Michel, 28 Mass. App. Ct. 260, 266-267 (1990).

criminal history dating back to 2007 involving assaultive behavior and domestic violence. Both before and after removal of the children, the mother engaged in physical altercations. During 2019 alone, police officers responded four times to calls involving domestic disputes between the mother and the father. The mother has also been the victim of domestic violence. There was abundant evidence that the children were exposed on myriad occasions to domestic violence.

DCF filed the instant care and protection petition on October 2, 2018, and removed the children. Following the mother's waiver of the seventy-hour hearing, DCF retained custody and subsequently placed the children with their preadoptive family where they remained through trial. From the time the children were removed from her custody, the mother failed to consistently engage in services and failed to comply with action plans and tasks assigned by DCF. She declined to attend various meetings and refused to sign releases or provide her address and other information sought by her social worker and DCF. The judge found, and the record supports, that the mother "did not make any verifiable progress" on her action plans between April 2017 and the time of trial in March of 2023, and did not "make any appreciable progress towards improving the neglectful conditions from which the children were removed in 2018." The mother was also inconsistent with visitation, and

3

after an in-person visit with her children on August 19, 2021, she did not visit them until February 10, 2022, and, following a September of 2022 visit, she had no contact with the children until March of 2023.

The mother did not appear for the first day of trial and misrepresented her reasons for not attending. During her trial testimony, the mother refused to answer questions and "presented with erratic and agitated behavior." The judge found that she was evasive and lacking in truthfulness and credibility.

Following trial, the judge ordered the entry of decrees finding the mother unfit and terminating her parental rights. The judge approved the adoption plan proposed by DCF and concluded that posttermination and postadoption visitation with the mother was not in the children's best interests.

Discussion. The mother first contends that her children should not have been removed from her custody because there was no showing that they were in "immediate danger of serious abuse or neglect."[7] Although not fully clear from her brief, it appears that the mother further contends that because of the

_____

[7] We see no evidence in the record that indicates any error in DCF's initial removal decision. In any event, after the initial removal, the mother waived her right to a temporary custody hearing and stipulated that DCF would have temporary custody. She thus waived her right to contest the propriety of the initial removal.

4

improper removal, the subsequent determinations of unfitness and termination of parental rights were invalid.

"To terminate parental rights to a child and to dispense with parental consent to adoption, a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence, that the parent is unfit to care for the child and that termination is in the child's best interests." Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012). "Parental unfitness is determined by considering a parent's character, temperament, conduct, and capacity to provide for the child's particular needs, affections, and age." Care & Protection of Vick, 89 Mass. App. Ct. 704, 706 (2016). We give substantial deference to the judge's findings, which we do not disturb unless they are clearly erroneous. See Adoption of Jacques, supra at 606-607.

For the myriad reasons detailed above, the mother's claims are without merit. The record supports the judge's 216 findings of fact, including her determinations that the mother did not, and could not, protect the children from exposure to domestic violence, creating an unsafe environment for them; she was unwilling or unable to obtain services for her children's needs; she refused to acknowledge the various needs of her children; she refused to engage in services or to recognize, much less remedy, her parenting shortfalls; and she failed to consistently

5

attend visits with the children.  The record supports the judge's conclusion that DCF proved by clear and convincing evidence that the mother is unfit.

As to termination of parental rights, the judge evaluated the provisions of G. L. c. 210, § 3 (c), and found factors (ii), (iii), (iv), (vi), (vii), (viii), (x), and (xii) to be applicable.  The record supports this determination, and the judge's conclusions.  Moreover, as detailed above, in light of the mother's failure to meaningfully address the issues that led to the removal of the children, there was ample record evidence to support the judge's findings and determination that the mother was unfit, and that termination of her parental rights was in the children's best interests.

Conclusion.  The record and the judge's detailed and comprehensive findings compel the conclusion that the termination decision "reflect[s] an even-handed assessment of all the relevant facts," Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption, 376 Mass. 252, 261 (1978), and that the judge did not abuse her discretion in entering the

6

decrees finding the mother unfit and terminating her parental rights.[8]

_Decrees affirmed._

By the Court (Rubin, Neyman & Tan, JJ.[9]),

_Paul Little_

Clerk

Entered:  April 30, 2025.

---

[8] The mother's claim that she is the victim of white supremacy is unsupported by the record.  There is no evidence to support any claim of racial bias.  We further note that the mother's argument is unsupported by citation to any legal authority and does not rise to the level of appellate argument.  See Adoption of Zak, 90 Mass. App. Ct. 840, 842 n.4 (2017) ("Assertions of error that lack legal citation do not rise to the level of appellate argument and will not be reviewed by this court").  The mother's claims that (1) she "had done nothing wrong to cause the removal of her children," and (2) the judge erred in drawing a negative inference from her failure to answer questions during trial, are likewise unsupported by citation to any legal authority.  Accordingly, appellate relief is not warranted.  In any event, the record belies the mother's assertion that her refusal to answer questions at trial was appropriate.  The trial transcript reveals that the mother refused to answer questions that were relevant to the critical issues of unfitness and the children's best interests.  There was no error.

[9] The panelists are listed in order of seniority.