COMMONWEALTH *vs.* HARRY H. HANGER, JR.

Suffolk. January 2, 1979. — March 13, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Practice, Criminal,* Disclosure of defense witnesses, Discovery. *Evidence,* Alibi.

It was error for the trial judge in a criminal case to allow the prosecutor's motion for an order that the defendant disclose whether he intended to rely on an alibi defense, the place he claimed to have been and the names and addresses of any and all prospective defense witnesses, where it appeared that the order was not accompanied by a reciprocal order that the prosecution notify the defendant of the names and addresses of its alibi rebuttal witnesses, that the prosecutor's motion was not made until after the trial had started, and that he had no ostensible justification for the delay. [508]

An alibi discovery motion by a prosecutor must be brought sufficiently in advance of trial to permit investigation by the defendant of the witnesses the prosecution expects to call in rebuttal. [509-510]

The Commonwealth discharged its burden of showing that error on the part of the trial judge in a criminal case with respect to allowance of the prosecutor's alibi discovery motion was harmless beyond a reasonable doubt where it appeared that there was overwhelming evidence of the defendant's guilt, and that nothing obtained by the prosecution, nor withheld from the defense, through the judge's discovery order prejudiced the defendant. [510-513]

INDICTMENTS found and returned in the Superior Court on May 16, 1977.

The cases were tried before *Mazzone, J.*

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*John Leubsdorf* for the defendant.

*Stephen M. Needle*, Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. After a trial by jury in the Superior Court, the defendant, Harry Hanger, was found guilty of assault with intent to rape, assault with intent to rob, kidnapping, assault and battery with a dangerous weapon, and simple assault. Sentenced to the Massachusetts Correctional Institution at Walpole, for a term of from twenty to thirty years,[1] the defendant appealed pursuant to G. L. c. 278, §§ 33A-33G. Following the Appeals Court's affirmance of his convictions,[2] this court granted the defendant's application for further appellate review in order to consider whether the trial judge's allowance of the prosecution's midtrial motion to discover Hanger's alibi defense—without the requirement of reciprocal discovery from the Commonwealth—constituted prejudicial error.

---

[1] This sentence was imposed for the defendant's conviction of assault with intent to commit rape. For the convictions of assault with intent to rob, kidnapping, and assault and battery with a dangerous weapon, the defendant was sentenced to terms of from nine to ten years to be served concurrently with each other and the sentence imposed for assault with intent to rape. The conviction for simple assault was placed on file.

[2] *Commonwealth* v. *Hanger*, 6 Mass. App. Ct. 405 (1978).

It is our view that the judge acted improperly in granting the prosecution's discovery motion. Nevertheless, we conclude in the context of this case that the judge's mistake is one of those rare instances that can be identified as harmless error. Accordingly, we affirm the judgments of conviction.

We summarize the evidence as it was presented at trial. On the afternoon of April 27, 1977, eighty-three year old Mrs. Lucille Singleton was brutally attacked as she walked along Washington Street in the South End of Boston. At approximately 12:05 P.M. that day, Singleton testified, she was forced into the back of a yellow van with a camper-type top, where, after being driven a short distance, the driver attempted to have intercourse with her. When she refused, the driver "stomped" her in the stomach, tore off her clothes as he searched for money, and then threw her out on the sidewalk before he drove away. By the victim's account, the attack lasted approximately fifteen minutes.

John Mesiti, a bystander who had observed the yellow van parked alongside the curb, came to Singleton's aid on noticing her on the sidewalk. The police were called, and, when they arrived at the scene, they were given a description of the van by Mesiti and a description of the assailant by Singleton. In consequence, a police radio bulletin was broadcast for a black male with a heavy build, operating a yellow van with a camper-type top. Within twenty minutes, police Officer James Carr, traveling on Harrison Avenue, observed a van and a driver fitting the radio description. He, in turn, radioed for assistance and shortly thereafter the van was stopped and its driver, the defendant, was arrested.

The victim, Mrs. Singleton, was admitted to Boston City Hospital, where she remained for nearly two months, having sustained multiple fractures, including a broken pelvis, lacerations, and contusions. Soon after her arrival at the hospital, she offered a detailed description of her attacker which closely corresponded to the appear-

ance of the man the police had apprehended. In addition, on May 4, 1977, Singleton, while still hospitalized, was shown a series of seven police mug shots, from which she positively identified the photograph of the defendant.

At trial, Singleton, Mesiti, and Officer Carr were called as witnesses to testify to the above facts. Paul Harrington, the assistant manager of a liquor store located across the street from the site where Singleton was abducted, also testified for the prosecution, stating that the defendant was a regular customer at the store, that he usually arrived driving a yellow van with a camper-type top, and that he had entered the store on the morning of the attack.

In defense, Hanger called seven witnesses. Two testified that no clothing fragments, bloodstains, or fingerprints of value had been found in the defendant's van; three others were called to dispute collateral matters in Singleton's testimony. The remaining two, Mrs. Eleanor Blasser (Blasser) and Michael Donahue (Donahue), were alibi witnesses.

Donahue, the dispatcher for THEM, Incorporated, a transportation agency for the handicapped and elderly, testified that the defendant was employed as a driver by that organization and was working the day Singleton was attacked. He stated that he remembered speaking with the defendant about 12:05 P.M. that day, instructing him via two-way radio to return from University Hospital to THEM's offices at 141 Milk Street in Boston. The defendant, according to Donahue, arrived at 12:12 P.M. and circled the block while Donahue came downstairs to meet him. Although it was not customary practice for a driver to return to the office for instructions, Donahue explained, the defendant's return was prompted by the fact that he intended to send the defendant into South Boston and did not wish to risk the driver's complaining over the air about being dispatched to a racially hostile neighborhood. After receiving his instructions, Donahue stated, the defendant set off at 12:17 P.M. for the New England Medical Center.

Once at his destination, the defendant picked up Blass-
er in order to transport her to her home in South Boston.
The time of his arrival at the New England Medical Cen-
ter remains unclear. Blasser stated that the defendant
appeared at 12:20 or 12:25 P.M. However, Donahue testi-
fied that at 12:30 P.M. he received a call from the New
England Medical Center, first inquiring as to the where-
abouts of the van, and then saying that the driver had
just arrived. Following examination of Blasser and Dona-
hue, Officer Carr testified in rebuttal that he had met
with both John Donahue, executive director of THEM,
and his brother, Michael Donahue, shortly after the de-
fendant's arrest. During this interview, Carr stated, it
was reported by the Donahue brothers that Hanger had
made no contact with THEM's offices between 11:50 A.M.
and 12:30 to 12:40 P.M. on the day of the crime.

After the trial had commenced, as the first witness,
Singleton, was beginning her testimony, the Common-
wealth moved to discover: (1) whether the defendant in-
tended to rely on an alibi defense; (2) the place the defend-
ant was at the time of the offense; (3) the names and
addresses of any and all prospective defense witnesses;
and (4) any and all statements made to the defense by any
witnesses. At the time the prosecution made this motion,
it had already supplied the defendant with written state-
ments of its prospective witnesses, see *Commonwealth* v.
*Lewinski*, 367 Mass. 889 (1975), grand jury minutes, see
*Commonwealth* v. *Stewart*, 365 Mass. 99 (1974), and
photographs. While denying the request for witnesses'
statements, the judge allowed those parts of the motion
which asked for notification of alibi, the place the defend-
ant claimed to have been, and the names and addresses
of defense witnesses. Although the defendant opposed the
motion's allowance and excepted to the judge's ruling, no
order was made to compel the prosecutor to furnish the
defense a list of rebuttal witnesses.[3]

[3] The Commonwealth had agreed, prior to the judge's ruling on its
motion, to provide the names and addresses of rebuttal witnesses or

The defendant contends on appeal[4] that the prosecution obtained discovery in triple violation of the standards we enunciated in *Commonwealth* v. *Edgerly,* 372 Mass. 337 (1977), a case decided approximately two and one-half months prior to the beginning of his trial. More specifically, the defendant maintains that the judge erred in allowing discovery by failing to order reciprocal disclosure of the prosecution's rebuttal witnesses, by entertaining the prosecution's untimely discovery motion, and by granting discovery of witnesses in addition to those permitted under *Edgerly.*

1. We agree that the judge erred. It is clear that his discovery order failed to accommodate the due process requirements set forth in *Edgerly.* As we held therein, a judge may constitutionally require disclosure to the prosecution of an alibi defense and the identity of alibi witnesses only so long as his order, taken in its entirety, is not fundamentally unfair to the defendant. *Commonwealth* v. *Edgerly,* 372 Mass. 337, 342 (1977). In all instances the discovery order "must" be accompanied by a reciprocal order directing the prosecution to notify the defendant of the names and addresses of witnesses on whom it intends to rely to dispute the defendant's alibi. *Id.* at 344. "It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State." *Wardius* v. *Oregon,* 412 U.S. 470, 476 (1973). See *Gilday* v. *Commonwealth,* 360 Mass. 170 (1971); *Blaisdell* v. *Commonwealth,* 372 Mass. 753 (1977). Thus, on this basis alone, the discovery order was defective.

---

other additional discovery material produced in response to the defendant's evidence.

[4] New counsel has been substituted on appeal.

It is also critical, however, that discovery of this nature take place sufficiently in advance of trial to permit investigation by the defendant of the witnesses the prosecution expects to call in rebuttal of the defendant's alibi. In *Edgerly* we did not specify a flat time limit on prosecutorial discovery motions; instead, we stated that motions should be filed reasonably in advance of trial. *Commonwealth* v. *Edgerly, supra.* Underlying this suggestion was our implicit belief that through delay the purpose of the notice-of-alibi rules could be frustrated. Mutual discovery provisions are designed "to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence." *Williams* v. *Florida,* 399 U.S. 78, 82 (1970). Hence, we think it imperative that this type of motion be brought sufficiently early so that the defendant, at least, has time to prepare his case in accord with any newly obtained information.

Despite the foregoing, we need not prescribe a more specific deadline for alibi discovery motions.[5] It is manifest in this case, where the discovery motion was not made until after the trial had started, that the motion came too late in the proceedings to permit the kind of investigation contemplated by the rule. Cf. *Commonwealth* v. *Ellison,* 376 Mass. 1, 25-26 (1978). In addition, we note that the prosecutor herein had no ostensible justification for the delay, inasmuch as he had met with defense counsel and the judge on at least two prior occasions to discuss the defendant's discovery motions.

---

[5] The proposed Massachusetts Rules of Criminal Procedure, which will become effective July 1, 1979, require the prosecution's discovery motion to be filed not less than twenty-one days prior to trial or within such other time as the court may allow. Mass. R. Crim. P. 14 (e) (2) (B). Accord, Fed. R. Crim. P. 12.1 (b) (1978) (list of rebuttal witnesses shall be served on the defendant "in no event less than ten days before trial, unless the court otherwise directs").

In view of what we have said so far, it is unnecessary to determine the propriety of that part of the judge's order granting the Commonwealth discovery of the defendant's nonalibi witnesses. It is sufficient to say, at present, that nothing in *Edgerly* should be interpreted as permitting prosecutorial discovery of aspects of a defendant's case unrelated to an alibi.

2. Although we think it plain that the judge erred in his treatment of the prosecution's discovery motion, this determination alone does not compel reversal of the defendant's convictions if it can be shown that the error was "harmless." The improper allowance of a prosecutor's discovery motion does not necessarily require a defendant's conviction to be overturned.[6] Rather, we think that the prosecution should be permitted the opportunity, or, stated alternatively, given the burden,[7] of demonstrating that an error in this context was harmless beyond a reasonable doubt. *Commonwealth* v. *Marini*, 375 Mass. 510, 520 (1978). *Chapman* v. *California*, 386 U.S. 18, 24 (1967). See *In re Winship*, 397 U.S. 358 (1970).

While recognizing the constitutional necessity of showing harmlessness beyond a reasonable doubt, we are mindful of the diverse tests that have been suggested to implement this standard of review. See generally Field, Assessing the Harmlessness of Federal Constitutional Error—A Process in Need of a Rationale, 125 U. Pa. L. Rev. 15 (1976); Saltzburg, The Harm of Harmless Error, 59 Va.

---

[6] There are, of course, some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error. E.g., *Gideon* v. *Wainwright*, 372 U.S. 335 (1963) (right to counsel); *Payne* v. *Arkansas*, 356 U.S. 560 (1958) (coerced confession); *Tumey* v. *Ohio*, 273 U.S. 510 (1927) (impartial judge). See generally R.J. Traynor, The Riddle of Harmless Error 64-73 (1970).

[7] "As a general rule, 'any violation of a constitutional right gives rise to presumptive prejudice, which normally requires a reversal of the conviction, in the absence of an affirmative showing by the Commonwealth that the error was harmless.'" *Commonwealth* v. *Manning*, 373 Mass. 438, 442-443 (1977), quoting from *Commonwealth* v. *MacDonald (No. 1.)*, 368 Mass. 395, 399 (1975).

L. Rev. 988 (1973). As we observed in *Commonwealth* v. *Marini, supra,* the Supreme Court has varied its approach regarding this issue. On several occasions it has indicated that the proper focus of analysis is whether the erroneously admitted evidence (or other constitutional error) might have contributed to a guilty verdict. *Chapman* v. *California, supra. Bumper* v. *North Carolina,* 391 U.S. 543, 550 (1968). Cf. *Fahy* v. *Connecticut,* 375 U.S. 85, 91 (1963). In other cases, the Court's harmless error inquiry has asked whether, once erroneously admitted evidence is excluded from consideration, there remains overwhelming evidence to support the jury's verdict. E.g., *Milton* v. *Wainwright,* 407 U.S. 371 (1972). Our decisions, too, have approached harmless error questions from both perspectives. Compare *Commonwealth* v. *Killelea,* 370 Mass. 638, 650 (1976), with *Commonwealth* v. *LeBlanc,* 364 Mass. 1, 10 (1973), and *Commonwealth* v. *Cohen,* 359 Mass. 140, 146 (1971).

To resolve the case before us now it is unnecessary to adopt a single test of harmless error.[8] Under either standard of review mentioned above we believe the judge's error was harmless beyond a reasonable doubt. Had the prosecution never discovered the defendant's intention to rely on an alibi defense, and had Officer Carr not rebutted Michael Donahue's account of the defendant's whereabouts at the time of the crime, there still would have been overwhelming evidence of the defendant's guilt. The victim, although elderly,[9] made repeated identifications

---

[8] Nor need we decide here whether the same "harmless error" test is applicable in cases of constitutional and nonconstitutional error alike. Compare *People* v. *Almestica,* 42 N.Y.2d 222 (1977), with *People* v. *Crimmins,* 36 N.Y.2d 230 (1975). At least one commentator has suggested that the standard for judging harmless error should not turn on the source of the error. See Saltzburg, The Harm of Harmless Error, 59 Va. L. Rev. 988 (1973).

[9] At a pretrial motion to suppress Singleton's out-of-court identification, the judge, in denying the motion, found the victim "intelligent, candid, perceptive, honest, and ... reliable for the purposes of this motion. She gives a good account of her circumstances. She testifies

of the defendant. The vehicle in which the crime took place was particularly distinctive, and all descriptions of it matched the one in which the defendant was apprehended shortly after the crime. The testimony of another witness, Paul Harrington, placed the defendant at the scene of the crime shortly before its occurrence.

We are also convinced that nothing obtained by the prosecution, nor withheld from the defense, through the judge's discovery order prejudiced the defendant. Contrary to the defendant's contention, we do not believe that the Commonwealth's examination of Singleton was materially aided by the prosecutor's knowledge of a forthcoming alibi defense. Indeed, the discovery motion itself was not granted until after Singleton's direct examination had concluded. Nor do we find prejudice in the defendant's disclosure of his nonalibi witnesses, assuming arguendo that this part of the judge's order was improper. The testimony of these witnesses was peripheral,[10] at best, and the prosecution's cross-examination of them was perfunctory, at most. Likewise, we reject the defendant's claim that the prosecution was unfairly benefited in its cross-examination of Blasser by its advance knowledge of the defense's intention to call her as an alibi witness. Even in the absence of cross-examination, Blasser's testimony was weak. By her own account in direct examination, the defendant arrived to pick her up at the New England Medical Center at a time not consistent with that during which Singleton and Mesiti placed the at-

as to the details. She has ... had an ample opportunity to view the defendant. She is not susceptible to any suggestions. She was not impressed by the dates of any of the photographs. She is not hesitant. She is not tentative, but on the other hand she is positive and definite."

[10] Among these witnesses were an assistant district attorney who repeated his pretrial testimony concerning the photographic identification of the defendant made by the victim, and the executive director of THEM, John Donahue, who testified that the color of the wheelchair in the van driven by the defendant had been different from the color of the wheelchair observed by the victim.

tack. To the extent that Blasser's credibility was shaken in cross-examination, we regard such effect as insubstantial in light of her direct examination testimony.

Lastly, we find no merit in the defendant's suggestion that the prosecution's failure reciprocally to disclose its intention to call Officer Carr to rebut Michael Donahue's alibi testimony resulted in the defense's being prejudicially surprised. It is apparent from the record that the material part of Officer Carr's rebuttal testimony—his interview with the Donahue brothers on the day of the crime—had been disclosed to the defense well in advance of trial. Carr's statement, which the prosecution supplied the defendant, included Michael Donahue's prior inconsistent statement relating to the whereabouts of the defendant at the time of the crime. Accordingly, defense counsel should reasonably have expected Carr to be called in rebuttal once Michael Donahue's testimony was offered.

In summary, we believe that the Commonwealth has discharged its burden of showing that the judge's discovery order was harmless beyond a reasonable doubt. It is clear in this case that the defendant would have gained nothing had the judge observed the requirements of *Edgerly*. See *United States* v. *Sink*, 586 F.2d 1041, 1051 (5th Cir. 1978); *United States* v. *Goldberg*, 582 F.2d 483, 489 (9th Cir. 1978).

*Judgments affirmed.*