COMMONWEALTH *vs.* BLAINE R. WANDERLICK. November 30, 1981. The defendant appeals from his convictions of kidnapping (G. L. c. 265, § 26), and rape (G. L. c. 265, § 22). The case was tried to the jury under the alternative theories that the defendant either kidnapped and raped the victim himself, or assisted another man in kidnapping and raping her. On appeal, he claims (1) that a statement to the police in which he confessed his guilt was improperly admitted in evidence and (2) that remarks by the judge within the hearing of the jury, to the effect that a joint venture had been established, amounted to an improper direction of a verdict on that issue. We affirm the convictions.

1. The defendant's contentions with respect to his statement to the police rest on facts which are said to negate a knowing and intelligent waiver of his constitutional rights. These facts are that he (1) was twenty years old, (2) was frightened, confused, and in an excited emotional state throughout his questioning by the police, and (3) is of below normal intellect. The judge denied the motion to suppress but made no explicit findings of fact, either from the bench or by way of written memorandum. Because the judge has retired, the case cannot be readily remanded for him to make findings at this time. See *Commonwealth* v. *Forrester*, 365 Mass. 37, 45 (1974). See also *Commonwealth* v. *Worlds*, 9 Mass. App. Ct. 162, 165 n.4 (1980). Nevertheless, the judge's denial of the motion implies findings that the defendant understood his Miranda rights, that he knowingly and intelligently waived them and chose to give the police a written statement, and that the statement was made by him freely and voluntarily. *Commonwealth* v. *Garcia*, 379 Mass. 422, 430-431 (1980). We have examined the evidence presented at the voir dire on the motion to suppress with "special care" (*Haley* v. *Ohio*, 332 U.S. 596, 599 [1948]) and are able to conclude that these implicit findings are supported by the evidence. See *Commonwealth* v. *Williams*, 378 Mass. 217, 224-225 & n.4 (1979); *Commonwealth* v. *Gaulden*, 383 Mass. 543, 547 (1981). Factors such as the age of the defendant or the stress inherent in a custodial interrogation will not automatically invalidate a waiver. See *Commonwealth* v. *Hooks*, 375 Mass. 284, 289 (1978); *Commonwealth* v. *Brady*, 380 Mass. 44, 49 (1980); *Commonwealth* v. *Wilborne*, 382 Mass. 241, 251-252 (1981). Likewise "an adult with a diminished or subnormal mental capacity may make an effective waiver of his rights and render a voluntary, knowing and admissible confession." *Commonwealth* v. *Daniels*, 366 Mass. 601, 606 (1975). See *Commonwealth* v. *White*,

362 Mass. 193, 196 (1972); *Commonwealth* v. *Harris*, 11 Mass. App. Ct. 165, 173 (1981). A judgment on the effectiveness of a waiver is to be based on the totality of the circumstances, including the testimony concerning the conduct of the defendant, his mental condition, his age, and the details of the interrogation. *Commonwealth* v. *Hosey*, 368 Mass. 571, 574 (1975). *Commonwealth* v. *Hooks*, 375 Mass. at 289. There was evidence that the defendant attended public schools and that, although he was in special classes, he completed the eleventh grade before leaving school. There was evidence that the defendant had obtained a driver's license and that he had held a job. A police officer, who had earlier interrogated the defendant about his involvement in a rape in Greenfield (to which the defendant ultimately pleaded guilty), testified that the defendant was read his constitutional rights one at a time from a sheet of paper; that the defendant expressly stated that he understood each right and affixed his initials beside each one on the paper after it was read; and that the defendant, before signing it, reviewed his entire statement for typographical errors, inaccurate facts, and facts which he did not wish included. Another police officer, who interrogated the defendant later the same night about the present crimes, testified that the defendant indicated that it was unnecessary to repeat his Miranda rights because he had "heard the whole thing before and . . . he understood them." When the officer persisted in stating all the warnings, he observed that the defendant "appeared to be with me and sometimes ahead of me" in his knowledge of the rights. Both police officers were satisfied that the defendant understood the nature of his rights. The second officer also testified that the defendant appeared to be an average young man possessed of an average vocabulary. The defendant admitted during his cross-examination at the voir dire that he understood that his right to silence allowed him to refuse to talk to the police. He also stated that he knew that he could have a lawyer at the interrogation if he wanted one. Compare *United States* v. *Warden, Ill. State Penitentiary*, 566 F.2d 28, 30 (7th Cir. 1977). There was no evidence of coercion, duress, or improper suggestions by the police and no evidence that the defendant was under the influence of either drugs or alcohol. The defendant's parents and girlfriend were at the station during most of the questioning. Both officers testified that the defendant appeared to be a person who wished to relieve his conscience of the weight of serious crimes. Although there was some evidence that the defendant had difficulty in school and that he could not follow relatively simple orders, the evidence did not indicate that the defendant suffered the degree of incapacity which afflicted the defendant in *Commonwealth* v. *Daniels*, 366 Mass. at 606-609. "It cannot be said that the defendant's appearance or behavior was such that his interrogators should have discerned and that the judge should have found that he could not comprehend the significance of his actions." *Commonwealth* v. *Roy*, 2 Mass. App. Ct. 14, 20 (1974), and cases cited. In the final analysis, the evi-

dence presented questions of fact for the judge as to the defendant's under-
standing of his rights and any waiver thereof. The judge resolved those
questions against the defendant based on an assessment of the witnesses
before him. See *Commonwealth* v. *Hooks, supra.* See also *United States*
v. *Holmes*, 632 F.2d 167, 168-169 (1st Cir. 1980). We cannot say that the
judge's implicit conclusions were unwarranted even though they were not
compelled by the evidence. See *Commonwealth* v. *Gaulden*, 383 Mass.
at 548.

2. On several occasions during the trial, the judge, in ruling on objec-
tions to the admission of evidence regarding the conduct of the second
participant in the crimes, stated his belief that the evidence established
the existence of a joint venture. On one of these occasions the judge ruled
"as a matter of law that there was a joint venture on the part of both par-
ticipants." Despite these comments, the judge indicated that he considered
the issue to be one for the jury. In the charge, the judge gave the jury ex-
tensive instructions about the necessity of finding that the defendant ac-
tively participated with another in a common enterprise before they could
conclude that the defendant was guilty on a joint venture theory. The
judge's comments during the trial were unfortunate because "[t]he influ-
ence of the trial judge on the jury is necessarily and properly of great
weight and his lightest word or intimation is received with deference, and
may prove controlling." *Commonwealth* v. *Hanscomb*, 367 Mass. 726,
732 (1975) (Hennessey, J. concurring), quoting from *Quercia* v. *United
States*, 289 U.S. 466, 470 (1933). However, in view of his comprehensive
final instructions on the issue, it is unlikely that the jury were misled by
those comments (cf. *Commonwealth* v. *Hanscomb, supra* at 731) or that
they failed to heed their responsibility with respect to the question of joint
venture as explained in those instructions. Even if error is assumed, it was
harmless beyond a reasonable doubt. See *Commonwealth* v. *Hanger*, 377
Mass. 503, 511 (1979). In the posture of the case as it went to the jury, the
defendant's own statement corroborated in detail all the facts of the vic-
tim's testimony which were necessary to support a verdict under the alter-
native joint venture theory.

*Judgments affirmed.*

*Peter G. DeGelleke* for the defendant.
*William E. Loughlin*, Assistant District Attorney, for the Common-
wealth.