COMMONWEALTH *vs.* WARREN LIMA.

No. 89-P-1288.

Bristol. September 13, 1990. - November 9, 1990.

Present: DREBEN, KAPLAN, & PORADA, JJ.

*Joint Enterprise. Practice, Criminal,* Instructions to jury, Plea. *Error,* Harmless. *Evidence,* Handwriting exemplar, Relevancy and materiality.

At the trial of an indictment for trafficking in marijuana, conducted on the theory that the defendant was a joint venturer, the judge improperly informed the jury that he would strike certain evidence unless the Commonwealth proved the existence of a joint venture beyond a reasonable doubt; in the circumstances, reasonable jurors could have been misled and could have believed that the judge had determined the existence of the joint venture when the evidence was not struck, and the defendant was thus entitled to a new trial. [495-497]

In a criminal case there was no constitutional basis for the defendant's objection to the use of two of his writing exemplars taken from court documents (a waiver of conflict of interest form and a conference report) to identify the handwriting on a document admitted in evidence. [497]

Certain physical evidence was properly admitted at a criminal trial. [497-498]

There was no merit to a criminal defendant's contention that the prosecutor violated two plea agreements [498].

INDICTMENT found and returned in the Superior Court Department on July 15, 1986.

The case was tried before *Guy Volterra,* J.

*Ira L. Schreiber* of Rhode Island for the defendant.

*Beth R. Levenson,* Assistant District Attorney, for the Commonwealth.

DREBEN, J. Her hold laden with bales of marijuana disguised as animal and bird feed, the fishing vessel "The Southern Star" docked at New Bedford on the night of July 22, 1983. Unbeknownst to the persons interested in her cargo, officers of the Bristol County drug task force, with the

aid of a full moon, saw numerous persons unloading pack-
ages from "The Southern Star" into two rented trucks, a Ry-
der and a Hertz. Police officers followed the Ryder truck to a
motel, arrested the driver, returned to the dock, and an-
nounced their presence.

Silhouetted figures on and near the vessel scattered, some
of them jumping into the water. A number of persons were
arrested at the scene. Although the defendant was not ar-
rested at that time, he was subsequently indicted for traffick-
ing in over 10,000 pounds of a controlled substance. Four
hundred and sixteen bales of marijuana, having a gross
weight of over 16,000 pounds, were seized by the police.

The defendant was convicted of the charged offense on a
theory of joint venture.[1] In his appeal, he claims, among
other things, that the judge impermissibly invaded the fact-
finding province of the jury in his discussions of joint venture
as it affected the admissibility of evidence. Because we con-
clude that reasonable jurors could have interpreted the
judge's comments as a determination by him that the Com-
monwealth had shown the existence of a joint venture in
which the defendant was a participant, we reverse the convic-
tion and remand for a new trial. Other issues raised by the
defendant will only be discussed if they are likely to arise at
his retrial.

1. *Judge's evidentiary instructions on joint venture.*

It was obvious from the start of the trial that many people
were involved in the project of unloading "The Southern
Star." The Commonwealth, in presenting items of evidence
relating to particular participants, represented that it would
subsequently introduce evidence to show that the defendant
was part of the joint enterprise. This procedure was proper.
See *Commonwealth* v. *Borans*, 379 Mass. 117, 145 n.26
(1979). If the Commonwealth fell short of its representa-

---

[1]In his charge to the jury, the judge twice instructed that the Common-
wealth was proceeding on a theory of joint enterprise, although he also at
one point stated that the Commonwealth "has proposed to you that the
defendant has violated the trafficking in marijuana statute either individu-
ally or in concert with at least one or more other persons." Thus, joint
venture was one of the theories, if not the only one, considered by the jury.

tions, the evidence would have been subject to a motion to strike.[2] *Ibid.* The Commonwealth met its burden, the defendant does not contend otherwise, and the judge correctly made a preliminary ruling that certain evidence was admissible. See *Commonwealth* v. *Beckett*, 373 Mass. 329, 337 n.3 (1977); *Commonwealth* v. *Bongarzone*, 390 Mass. 326, 340 (1983). The difficulty arises because, contrary to the admonition in *Commonwealth* v. *Beckett, supra* at 337 n.3,[3] that ruling was made known to the jury, and the judge did not sufficiently make clear to them that his initial decision should not affect their determination whether the defendant was a participant in a common enterprise.

The judge discussed the question of joint enterprise many times. On the second day of trial, when defense counsel objected to the introduction of a key to a motel room taken from the driver of the Ryder truck, the judge stated:

> "I'm admitting this particular key in evidence as a key which, as was stated by the witness — and, of course, it's for you to determine whether or not you find the witness credible — which was seized, he claims, from this man [the driver of the Ryder truck].
>
> "Now, it's only admissible in evidence in this particular trial if there is a showing by the Commonwealth beyond a reasonable doubt that [the driver] and the defendant Lima were joint venturers in a criminal enterprise, and that at the time Mr. Lima shared the same state of mind that [the driver] had. And *unless that is shown, then it would be inadmissible and I would strike this key.*" (Emphasis supplied.)

---

[2] Only if the jury found that the defendant was a joint venturer would they be able to apply against the defendant the evidence presented against others. See *Commonwealth* v. *Young*, 10 Mass. App. Ct. 410, 414 (1980).

[3] No purpose is served by making the judge's initial ruling known to the jury, and such information is bound to create a potential for prejudice. As stated in *Commonwealth* v. *Beckett, supra,* "The judge should not disclose his rulings to the jury because . . . the jury will be instructed to consider the same questions to determine whether [they] should make the findings which the judge concluded were warranted."

Again, when the defendant objected to the introduction of a hotel receipt removed from a bag in the cab of the Ryder truck, and later to the introduction of the rental receipt of the truck, the judge said as to each of the two documents that they would only be admissible in evidence against Lima if the Commonwealth was successful in showing a joint criminal enterprise.

On the afternoon of the second day, after correctly explaining what the Commonwealth had to prove beyond a reasonable doubt to establish a joint venture, the judge continued:

> "The defendant's guilt under a joint venture theory is established when it is shown beyond a reasonable doubt that he intentionally assisted the actual perpetrators in the commission of the offense, and that he did this while sharing the mental state required for that particular crime.

> "So, again, more evidence is going to be received this afternoon in an attempt to show such a thing to your satisfaction. And it's being admitted by me on the assumption that the Commonwealth will prove to your satisfaction beyond a reasonable doubt that, in fact, this defendant did associate himself in such a criminal venture.

> "*In the event that the Commonwealth fails to show that, then under such circumstances I would strike out the evidence.*" (Emphasis supplied.)

On the fifth day, a photograph of one of the persons arrested was admitted, the judge saying:

> "Ladies and gentlemen of the jury, apparently this is a photograph of a person who was arrested that evening. And, again, this evidence would be only material to the issues that are being tried in this case if it can be shown that the individual depicted in the photograph

was a participant with the defendant, Mr. Lima, in a joint criminal enterprise and that, at the time that the joint criminal enterprise was in effect, both Mr. Lima and the individual that's depicted in the photograph shared the same intent, same state of mind. And *if that can't be shown, then the picture would be inadmissible and would be excluded and I would strike it from the record.*" (Emphasis supplied.)

Defense counsel objected to the judge's instructions concerning evidence that had been admitted de bene, arguing that the "clear implication" of the judge's instructions was "that if the Court fails to strike the pertinent exhibits, then the jury may reasonably infer that the Court has ruled that there is a nexus between each of those alleged joint venturers reflected in the pertinent exhibits and the defendant, and that the joint venture exists." To cure this difficulty, defense counsel asked that the exhibits be withdrawn, or, in the alternative, that a mistrial be granted. Instead, the judge instructed the jury as set forth in the margin.[4]

---

[4]"In a jury trial, there is a division of responsibility between me as the judge of the law and you as the judges of the facts. And it is inappropriate for me to invade your function as the judges of the facts. And at no time would I want to invade your function. Your function is the most important one, because you determine all of the factual issues in this particular trial.

"On the other hand, I have the responsibility as the judge of the law to go to the side bar and discuss with counsel the admissibility of evidence.

"In this particular case, the Commonwealth is alleging that Mr. Lima, the defendant, was a participant in a joint criminal enterprise that dealt with the bringing in of the marijuana that you've heard mentioned in this particular trial.

"In order to perform my responsibilities, I from time to time have to rule on evidence that comes in, which the Commonwealth offers to prove to you factually, one, the existence of a joint criminal enterprise; and, two, the fact that Mr. Lima participated in that joint criminal enterprise.

"The Commonwealth has the responsibility of showing Mr. Lima's participation in the joint criminal enterprise by proof beyond a reasonable doubt.

"As evidence comes in, it's within my power as the trial judge to admit evidence preliminarily on the promise by the District Attorney

Defense counsel requested that the judge add words to the effect that, "if I do admit this testimony, then you are not to presume from my action that I have supplanted your decision-making power." The judge did not do so.

Although the jury were properly informed that it was for them to determine whether or not Lima was a participant in a joint venture, see note 4, *supra*, and were again so instructed in the judge's final charge, they were also informed at least twice that unless the Commonwealth proved the existence of a joint venture beyond a reasonable doubt the judge would strike the evidence. In these circumstances, we think reasonable jurors could have been misled and could have believed that the judge had determined that question in the

that other testimony will be introduced at the trial which will substantiate the appropriate admissibility into evidence of that particular evidence.

"Now, what are we talking about? We've been talking about these photographs, things that were going on at the scene, et cetera. In the event that the promised evidence is not produced and appropriate motions to strike are made by the opposing party, the defendant, then under such circumstances it is within my power to exclude that evidence.

"So, essentially, in this trial, as the evidence has been produced so far, it has all been introduced preliminarily as an offer by the Commonwealth to preliminarily show the existence of such a joint enterprise. Whether or not such a joint criminal enterprise existed is a matter of fact which only you, the jury, may determine. I don't determine that at all. It's strictly none of my business.

"My business deals only with the admissibility of evidence, and so far in this trial, I have admitted evidence preliminarily on the basis that there would be a showing which the jury would believe that Mr. Lima was a joint criminal venturer.

"What do we mean by that? We mean that it is an issue of fact in this case as to whether or not there was a joint enterprise in which two or more individuals were engaged. And furthermore, there must be a showing beyond a reasonable doubt that the defendant himself associated himself with the criminal venture and participated to some extent in the commission of the offense.

"Guilt of the defendant can only be established when it is shown beyond a reasonable doubt that he intentionally assisted the others who you found to have engaged in a criminal enterprise, and that he, meaning Lima, did that sharing with those others the mental state required for that crime, namely the dispensing of this particular quantity of marijuana."

Commonwealth's favor. Cf. *Commonwealth v. Moreira*, 385 Mass. 792, 796 (1982). Even if the jurors understood that they, too, had to decide the same question, their possible misunderstanding of the judge's action created a serious potential for prejudice. "The influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.'" *Commonwealth v. Hanscomb*, 367 Mass. 726, 732 (1975) (Hennessey, J., concurring). *Commonwealth v. Wanderlick*, 12 Mass. App. Ct. 970, 972 (1981).

Unlike *Commonwealth v. Wanderlick*, *supra* (where the defendant made a statement admitting his guilt), and *United States v. August*, 745 F.2d 400, 404-406 (6th Cir. 1984) (where strong curative instructions were given), we can not say that the error was harmless beyond a reasonable doubt. See *Commonwealth v. Hanger*, 377 Mass. 503, 511 (1979). See also *Commonwealth v. Skinner*, 408 Mass. 88, 97 (1990). This is so despite the following substantial evidence linking the defendant to the drug venture. The rental agent from Hertz testified that Hertz truck no. 91679 (a police photograph of the Hertz truck at dockside had the same number) was rented by someone named Warren Lima, that the agent had seen Lima's driver's license, and that the man who rented the truck was the man whose photograph appeared on his license.[5] A handwriting expert opined, based on other documents signed by the defendant, that the signature on the rental agreement was the defendant's.

The other evidence linking Lima to the crime came mainly from three participants in the venture who had pleaded guilty but had not yet been sentenced — the driver of the Ryder truck and two other persons. Their plea agreements provided that in exchange for truthful testimony, the district

---

[5]The Hertz agent, however, was not asked to identify the defendant at trial, and although the latter was present in the courtroom, the agent stated that he had not seen the man who had rented the truck since the occasion of the rental. He also described the man as quite young (twenty-five) although at the sentencing hearing Lima was said to be thirty-nine.

attorney would recommend that, instead of much longer prison sentences, two of the joint venturers (one of whom was the driver) should receive three-to-five year suspended sentences to M.C.I. Cedar Junction, and that the third should receive a similar sentence but with one year of prison time. These witnesses, other than the driver, identified Lima and testified that he had taken an active role in the venture. One also recounted statements of Lima indicating conscious-ness of guilt. The driver testified that a dark complexioned man with a mustache (Lima was dark-skinned) who carried a walkie-talkie gave him written instructions and a motel key. The driver could not identify the defendant. A walkie-talkie was, however, found at the scene by another witness.

While the evidence of the defendant's participation in the joint venture was strong, the coventurers who pleaded had powerful incentives to please the prosecutor. Whether the jury would have reached the same conclusion had the judge not improperly informed them of his decisions on the admis-sibility of evidence is not, in our view, beyond a reasonable doubt.

2. *Other claims.* (a) The handwriting expert's opinion that the defendant signed the Hertz rental agreement was based on two writing exemplars taken from court documents — a waiver of conflict of interest form and a conference report. The defendant's Federal constitutional claims that the exem-plars were improperly used are ill-founded. His Fourth Amendment argument is foreclosed because "there is no more expectation of privacy in the physical characteristics of a person's script than there is in the tone of his voice." *United States* v. *Mara,* 410 U.S. 19, 21 (1973). His Fifth Amendment claim also falls short because the handwriting exemplar is not testimonial or communicative. *Gilbert* v. *Cal-ifornia,* 388 U.S. 263, 266-267 (1967). See also *Common-wealth* v. *Mahoney,* 400 Mass. 524, 527 (1987).

(b) The claim that a walkie-talkie should not have been admitted in evidence because the witness who found such a device thought that the one he brought to the police station was longer and looked different goes to the weight of the evi-

dence and not its admissibility. *Commonwealth* v. *Berth*, 385 Mass. 784, 791 (1982). *Commonwealth* v. *Zitano*, 23 Mass. App. Ct. 403, 407 (1987). The trial judge was well within his discretion in determining that the walkie-talkie was relevant. See *Commonwealth* v. *Lewis*, 346 Mass. 373, 382 (1963), cert. denied, 376 U.S. 933 (1964). See also *Commonwealth* v. *Westmoreland*, 388 Mass. 269, 279 (1983).

(c) The defendant claims that the prosecutor improperly reneged on two plea agreements. See *Commonwealth* v. *Smith*, 384 Mass. 519, 521-522 (1981). If the defendant on remand chooses to go to trial rather than plead, the alleged plea agreements will be of no concern. In the event that they should become relevant (i.e., the defendant pleads guilty), we conclude that the judge's determination, based on Lima's affidavit, that the defendant did not comply with the proposed agreements is not clearly erroneous. It follows that there was no violation of the agreements by the prosecutor.

The judgment is reversed, the verdict is set aside, and the matter is remanded to the Superior Court for retrial.

*So ordered.*