COMMONWEALTH vs. SAMMIE L. MITCHELL.

Plymouth. June 11, 1981. — August 19, 1981.

Present: DREBEN, ROSE, & KASS, JJ.

*Practice, Criminal,* Comment by prosecutor, Instructions to jury. *Evidence,* Cross-examination, Bias.

A prosecutor's reference in his closing argument to the defendant's failure to go to the police to protest his innocence was not unfairly prejudicial to the defendant where the defendant, on direct examination, had testified to his readiness to go to the police to straighten the matter out. [354-356]

At a robbery trial, that portion of the judge's charge in which he stated, "I don't believe there is any serious question as to the fact that there might have been a robbery although that is for you to say whether there was a robbery or not," did not amount to an instruction as to what inferences the jury were to draw and was not misleading. [356-357]

The judge at a criminal trial did not improperly limit the defendant's cross-examination of a Commonwealth witness by excluding a question as to whether a defense witness, who had not yet testified, would have any motive to testify falsely where the judge made clear that the question might be allowed after the defense witness testified and where defense counsel had already asked other questions for the purpose of establishing the witness's lack of motive to testify falsely. [357-358]

INDICTMENTS found and returned in the Superior Court Department on April 16, 1980.

The cases were tried before *Taveira, J.*

*Brownlow M. Speer* for the defendant.

*Rosemary Ford,* Assistant District Attorney, for the Commonwealth.

KASS, J. Three errors, the defendant asserts, attended his convictions of armed robbery in a dwelling house and masked armed robbery: (1) improper closing argument by

the prosecutor; (2) an error in the jury instructions; and (3) improper limitation on the defense's cross-examination of the chief prosecution witness.

1. *Improper closing argument.* In his closing argument, the prosecutor asked the jury to infer guilt from the defendant's failure to go to the police to protest his innocence. Defense counsel neither objected to the prosecutor's argument nor requested the trial judge to give curative instructions to the jury. Compare *Commonwealth* v. *Killelea*, 370 Mass. 638, 645 (1976); *Commonwealth* v. *Gouveia*, 371 Mass. 566, 571-572 (1976). To the degree that the prosecutor's argument was improper, therefore, it constitutes reversible error only if, examined against the backdrop of the entire case, a miscarriage of justice occurred. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). *Commonwealth* v. *Shelley*, 374 Mass. 466, 467 (1978).

In the instant case the defendant took the stand and, while under direct examination by his counsel, testified that he had confronted one Murphy, who was the person who had been robbed, and that the defendant had told him, "I was on probation right now and that if he thought I had anything to do with it for us to go to the station because Bobby [a reference to Robert Mackedon, a mutual acquaintance of the defendant and Murphy] had told me that he had warrants out for me. I said, 'Before-I get picked up, let's go to the station now.'" The prosecutor, in final argument, said: "[The defendant] was so concerned about being on probation, and yet he states . . . that he did not go to the police. He says he knew that he was going to get in trouble, but did he ever go to the police station to straighten it out. No. He was arrested nine days later by his own testimony. Did he ever go to the police? He was so concerned because he was innocent and he wanted to straighten it out, but he never went to the police. The police had to come and get him."

A prosecutor's closing argument which invites a jury to draw an adverse inference from a defendant's failure to deny his guilt is improper. *Commonwealth* v. *Haas*, 373

Mass. 545, 559 (1977). *Commonwealth* v. *Cobb*, 374 Mass. 514, 520-521 (1978). *Commownealth* v. *Mosby*, 11 Mass. App. Ct. 1, 5-9 (1980). See *Commonwealth* v. *Sazama*, 339 Mass. 154, 157-158 (1959). Assuming that the prosecutor intended such an invitation, rather than a comment on the implausibility of the defendant's testimony, the case here is substantially less egregious than *Commonwealth* v. *Haas*, *supra*, in which the prosecutor's comments were not about the evidence, but simply invited the jury to draw an adverse inference from Haas' failure to deny his guilt, something the defendant in that case had not testified about and was, of course, not bound to do. Moreover, the defense in *Haas* sought curative instructions, and they were denied. No curative instructions were requested in the case before us.

This case does not present a prosecutor's argument based upon facts not in evidence or on a misstatement of the evidence. *Commonwealth* v. *Shelley*, 374 Mass. at 470. *Commonwealth* v. *Ryan*, 8 Mass. App. Ct. 941 (1979). *Commonwealth* v. *Mosby*, 11 Mass. App. Ct. at 5. Since the defendant had introduced into the case (presumably so that the jury would infer his innocence) his readiness to go to the police "to straighten it out," the prosecutor's reference to that testimony in closing was proper and consistent with the state of the evidence. *Commonwealth* v. *Thurber*, 383 Mass. 328, 334-335 (1981). Even if we view it in more damaging light, i.e., as a generalized comment on the defendant's failure to protest innocence, we doubt, reading the prosecutor's closing as a whole, that the passage complained of caused the closing argument to be unfairly prejudicial. *Commonwealth* v. *Ferreira*, 381 Mass. 306, 316-317 (1980).

2. *Claimed error in the charge to the jury.* In the course of his charge, the judge said, "I don't believe there is any serious question as to the fact that there might have been a robbery although that is for you to say whether there was a robbery or not. You people have to make a determination as to whether there was a robbery . . . ." The judge did not say unequivocally that a robbery had occurred; he said one *might* have, and that comment was immediately followed

with a correct instruction that whether there had been a robbery was for the jury to decide. The instruction, fairly read, does not amount to an instruction to the jury as to what inferences they were to draw. Contrast *Commonwealth v. Sneed*, 376 Mass. 867, 870 (1978); *Commonwealth v. Borges*, 2 Mass. App. Ct. 869, 869-870 (1974); *Commonwealth v. Cote*, 5 Mass. App. Ct. 365, 369-370 (1977), which illustrate a judge's usurpation of the fact-finding function of a jury. More significant, no objection was made to the judge's instructions, and the defendant's case was argued on the theory that a robbery had, in fact, occurred, but that the defendant was mistakenly implicated. In context and in its entirety, the charge was not misleading. See *Commonwealth v. McInerney*, 373 Mass. 136, 149 (1977); *Commonwealth v. Williams*, 378 Mass. 217, 238 n.17 (1979).

3. *Limitation on cross-examination.* Defense counsel, on cross-examination of Murphy, who was the Commonwealth's principal witness, put the following question: "Any reason why [Mackedon, a scheduled defense witness and, as noted, a mutual friend of Murphy and the defendant] would get on that stand and testify that he was at your house Saturday morning? Would he be telling a lie?" The judge excluded the question with the comment, "Let's wait until [Mackedon] takes the stand and we hear his testimony." The question, therefore, was not excluded but postponed, should Mackedon's testimony make it apt. In any event, the question was scarcely an effective probe for Murphy's bias (its purported purpose); rather it dealt with the motives of a witness who had yet to appear. Compare *Commonwealth v. Ahearn*, 370 Mass. 283, 287 (1976) (reasonable cross-examination for the purpose of showing bias and prejudice of a witness is a matter of right). See *Gynan v. Hayes*, 9 Mass. App. Ct. 721, 724 (1980) (trial judge has abundant discretion in setting boundaries of cross-examination). See also *Commonwealth v. Hicks*, 377 Mass. 1, 8 (1979) (right to cross-examine not necessarily infringed by limitation of questioning where the information sought to

be elicited has already been aired).  Defense counsel had already asked questions which served the purpose of establishing Mackedon's lack of motive to testify falsely.

*Judgments affirmed.*