COMMONWEALTH *vs.* WILLIAM C. PURCELL (and companion cases[1]). April 25, 1985. *Burglarious Implements. Practice, Criminal,* Instructions to jury, Assistance of counsel.

The defendants were convicted of breaking and entering in the nighttime with intent to commit, as well as the commission of, larceny and of possession of burglarious implements. The sentences (slightly shorter on the latter indictments than on the former) were concurrent.

There was evidence that prowlers were spotted behind the house of a Mrs. O'Connell in a quiet residential neighborhood around 10:30 P.M.; that when the police arrived they found the handbag of a Mrs. Fontaine behind Mrs. O'Connell's house; that Mrs. Fontaine lived two houses away; that her purse was missing twenty-four dollars and a small flashlight; that around 11:00 P.M. the defendants were found hiding in bushes outside another nearby house in possession of the flashlight and twenty-four dollars (placed separately from other money in a side pants pocket); that they gave various and implausible explanations for their presence there; and that a screwdriver, not belonging to the homeowner, was found in the bushes where they had hidden. A miscellany of error is alleged, of which one has merit.

1. On the indictments for possession of burglarious implements, the jury were charged in a manner that permitted guilty verdicts based on the defendants' possession of either the gloves or the screwdriver. The jury may well have based the guilty verdicts on the gloves, which were found on the defendants' persons. (The screwdriver was found in the bushes where the defendants had hidden.) In *Commonwealth* v. *Jones,* 355 Mass. 170, 176-177 (1969), it was stated that gloves, even if worn to facilitate a burglary (as, e.g., by concealing fingerprints), would not be burglarious implements. The contrary was assumed to be true in *Commonwealth* v. *Dellinger,* 10 Mass. App. Ct. 549, 560-561 (1980), reversed on other grounds, 383 Mass. 780 (1981), but without discussion of the question. We must follow the *Jones* case, and we think this requires reversal of the convictions on the burglarious implements indictments despite the absence of an objection to the charge. Compare *Commonwealth* v. *Dunphy,* 377 Mass. 453, 458-459 (1979).

2. The other points argued are without merit. (a) The inadequacies in the judge's charge relied on in this court (e.g. failure to define "larceny" other than as "stealing," his instruction that the nighttime element was undisputed) were not raised at trial, and it is easily inferable that the reason they were not raised was that additional instructions in these areas would have availed the defendants naught. The jury were not likely to conclude that the individuals who removed the twenty-four dollars from Mrs. Fontaine's purse lacked an intention permanently to deprive her thereof; nor were they apt to conclude that the break occurred in the daytime, when the evidence put it between 10:00 P.M. and 10:30 P.M. See *Commonwealth* v. *Kingsbury,* 378 Mass. 751, 752-755 (1979). Counsel were not "manifestly unreasonable" in declining to ask for instructions that could be thought

[1] The other defendant is William G. Smith.

academic in the circumstances. See *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978). Compare e.g., *Commonwealth* v. *Brimley, ante* 978 (1985). (b) The isolated (and, in context, ambiguous) statement of Mrs. Fontaine that her husband left the door "ajar" did not require the jury to disregard other evidence from which they could (and presumably did) properly draw the conclusion that the intruders must have "moved to a material degree [a door] that barred the way," *Commonwealth* v. *Tilley*, 355 Mass. 507, 508 (1969), thus committing a break. (c) Although Mrs. O'Connell did not testify, the evidence that two intruders were on her patio, that Mrs. Fontaine's purse was found there, and that contents thereof were in the defendants' possession minutes later, fully justified the prosecutor's claim that the Commonwealth would introduce "evidence that [the defendants] were up behind Mrs. O'Connell's home." (d) The hearsay evidence elicited by Smith's counsel from Officer Cook was largely cumulative of other testimony already in evidence and was harmless; it appears to have been elicited as part of a reasonable trial tactic to try to weaken the evidentiary force of the twenty-four dollars found in Smith's pocket. (e) It would have been futile for Smith's counsel to move for a directed verdict, since Purcell's motion for such had been denied. (f) The closing arguments of defense counsel attempted to throw doubt upon the conduct of the police investigation and to emphasize the fact that the defendants did not flee when approached, first by neighbors, then by the police. The strategy was reasonable; there was little else they could do. "[T]he basic trouble from the defense standpoint was weakness in the facts rather than any inadequacy of counsel." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 111 (1977).

3. The judgments entered on the indictments for possession of burglarious implements are reversed, and the verdicts thereon are set aside. The judgments on the indictments for breaking and entering in the nighttime with intent to commit larceny, and for larceny, are affirmed.

*So ordered.*

*Kathleen A. Larocque (M. Robert Dushman* with her) for William C. Purcell.

*Mary M. McCallum* for William G. Smith.

*David C. Phalen*, Assistant District Attorney (*Charles J. Hely*, Assistant District Attorney, with him) for the Commonwealth.