## COMMONWEALTH *vs.* ROBERT WILLIAMS, JR.
## (and two companion cases[1]).

Middlesex. September 10, 1986. — January 16, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Homicide. Robbery. Proximate Cause. Practice, Criminal,* New trial, Severance. *Identification. Due Process of Law,* Identification. *Evidence,* Spontaneous utterance. *Joint enterprise.*

The judge at a murder trial properly instructed the jury as to the Commonwealth's burden of proving that the defendant's act proximately caused the victim's death, which occurred two weeks after he had been stabbed. [62-63]

A motion for a new trial by a defendant convicted of murder, alleging newly discovered evidence that the victim died as the result of medical malpractice, rather than from stab wounds, was properly denied on the ground that the evidence in question, based upon the victim's hospital records, had been available to the defendant before trial. [63-64]

Where a criminal defendant did not file an affidavit in support of his pretrial motion for severance, as required by Mass. R. Crim. P. 9 (d) (2), and where no contention was made that during the trial he asserted a ground for severance that had been unknown previously, a judge was warranted in denying the motion. [65]

At the joint trial of two defendants on indictments arising from a robbery at a package liquor store, there was no error in the admission of testimony concerning a police "showup" in which a witness identified the defendants as the two men he had seen leaving the store less than five minutes earlier, and in the admission of that witness's in-court identification of the defendants. [66-68]

Statements made by the victim of a stabbing, in response to a witness's inquiries, were properly admitted in evidence at a murder trial under the "spontaneous utterance" exception to the hearsay rule, where the judge was warranted in finding that the victim made the statements no more than three mintues after he was stabbed and that, at the time, he was in shock. [68-69]

At the trial of an indictment charging armed robbery while masked, in which the Commonwealth proceeded on a theory of joint enterprise, the

[1] Of the two companion cases, one is against Robert Williams, Jr., and one is against Joseph L. Mays.

evidence was sufficient to warrant the jury in finding that the defendant participated in the conduct of his codefendant, fully sharing his criminal intent and with full awareness of all the relevant circumstances. [69-70]

INDICTMENTS found and returned in the Superior Court Department on May 12, 1981.

The cases were tried before *Thomas R. Morse, Jr.,* J., and a motion of the defendant Williams for a new trial was heard by him.

*Edward T. Patten* for Robert Williams, Jr.

*Severlin B. Singleton, III,* for Joseph L. Mays.

*Natalea Skvir,* Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. The defendants were indicted on charges arising from the armed robbery and stabbing of a clerk at a package liquor store in Lowell on March 4, 1981. Both men were charged with the murder in the first degree of Donald E. Roberts, armed robbery while masked, and assault and battery by means of a dangerous weapon. The defendant Williams was convicted on all the indictments against him. He was sentenced to concurrent terms of life imprisonment at the Massachusetts Correctional Institution at Walpole (Cedar Junction) on the convictions for murder and for armed robbery while masked. The indictment for assault and battery by means of a dangerous weapon was dismissed. The defendant Mays was convicted of armed robbery while masked, and was acquitted on the other charges. He was sentenced to life imprisonment at the Massachusetts Correctional Institution at Walpole. Both defendants appeal from their convictions. Williams also appeals from the denial of his motion for a new trial. We affirm.

Williams asserts two claims of error: (1) that the trial judge erroneously failed to instruct the jury that the Commonwealth had the burden of proving that his act was the proximate cause of Roberts's death, and (2) that the judge improperly denied his motion for a new trial grounded on newly discovered evidence bearing on the causation issue. Mays contends that the judge committed reversible error by (1) denying his motion for

severance of his trial from that of Williams; (2) denying his motion to suppress an out-of-court identification, and admitting the same witness's in-court identification; (3) admitting in evidence the victim's statements; and (4) denying his motion for a required finding of not guilty.

The theory of the Commonwealth's case was that the defendants as joint venturers committed a robbery at a package store, that in the course of the robbery the clerk was stabbed, and that as a result of the stabbing the clerk died two weeks later. We reserve recitation of the evidence and findings of the judge for discussion in connection with the specific issues to which they relate.

We begin with Williams's two claims of error. First, he asserts that, in his jury instructions, the judge failed to inform the jury that the burden was on the Commonwealth to prove that the defendant proximately caused the victim's death. There was no error. The armed robbery and stabbing occurred on March 4, 1981. The victim lost consciousness in the hospital the next day and remained unconscious until he died on March 19, two weeks later. The medical examiner testified that the victim had died "as a result of multiple stab wounds with perforation of the skull and the brain." The same cause of death appeared on the certificate of death, a certified copy of which was admitted in evidence. No contrary evidence was introduced. At a bench conference relative to the admissibility of photographs of the victim's body, counsel for both defendants told the judge that there was no dispute about causation. We review the charge in light of the evidence and the representations of counsel. The judge charged the jury as follows: "It is not necessary for the Commonwealth to prove the act or acts of the defendant or defendants caused the death to occur immediately. If you find that one or both of the defendants . . . stabbed Mr. Roberts and he died as a result of that stabbing, even though it was on March 19th, the Commonwealth has met its burden if you are so persuaded beyond a reasonable doubt. Under the Commonwealth law this is still murder, if there has been the act that caused the death in the year, within a year and day of the act that occasioned

death."[2] In the circumstances, no further refinement of the concept of causation was necessary. Cf. *Commonwealth* v. *Rhoades*, 379 Mass. 810, 823-825 (1980). The charge on causation was entirely adequate. Furthermore, Williams did not request a different instruction nor object to the one that was given. Therefore, even if the charge were inadequate, the appropriate test would be whether the inadequacy created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Doucette*, 391 Mass. 443, 450 (1984). Clearly, there was no such risk since proximate causation was not a live issue at trial. *Commonwealth* v. *Gabbidon*, 398 Mass. 1, 5 (1986).

Williams's second claim is that the judge erred in denying his motion for a new trial grounded on newly discovered evidence relevant to causation. The motion for a new trial was filed two years after the trial, which had proceeded from January 6 through January 12, 1982, and it alleged newly discovered evidence that the victim had died as the result of medical malpractice rather than from stab wounds. In support of his motion, Williams submitted a copy of a complaint, docket sheets, and the report of a medical malpractice tribunal, favorable to the plaintiff, in a civil malpractice action brought by the victim's widow on September 29, 1981, against the doctors who had treated the victim. Williams also submitted an affidavit from his trial counsel stating that he was unaware of the malpractice action at the time of Williams's trial.

The trial judge denied the motion, and Williams moved for further hearing and reconsideration, proffering letters of three doctors to the effect that the medical care received by the victim in the hospital failed to meet acceptable medical standards. These letters, based on the victim's hospital records, had been submitted in support of the malpractice action. Williams also submitted part of an interrogatory answer of one of the defendant doctors in that case. The judge declined to alter his

[2] We note that in *Commonwealth* v. *Lewis*, 381 Mass. 411 (1980), cert. denied sub nom. *Phillips* v. *Massachusetts*, 450 U.S. 929 (1981), we declined to follow the former common law rule that a crime could not be prosecuted as homicide if the victim died more than a year and a day after the criminal act. Cf. *Commonwealth* v. *Golston*, 373 Mass. 249, 255 (1977), cert. denied, 434 U.S. 1039 (1978).

ruling, stating that he had "difficulty in concluding that the evidence [was] indeed 'newly discovered.' " The judge attached significance to the fact that the malpractice action was entered in September, 1981, and the tribunal finding was made in January, 1982. He reasoned that, "[i]f the victim's widow was able to gather enough evidence to make an offer of proof to the tribunal [before] January, 1982, the defendant also had ample opportunity to examine the hospital records and raise the issue of causation."

When a motion for a new trial is grounded on newly discovered evidence, the evidence must have been unknown and unavailable at the time of trial despite the diligence of the moving party. *Commonwealth* v. *Grace*, 397 Mass. 303, 306 (1986). *Commonwealth* v. *Ortiz*, 393 Mass. 523, 538 (1984). *Commonwealth* v. *Brown*, 378 Mass. 165, 171-172 (1979). *Sharpe, petitioner*, 322 Mass. 441, 444 (1948). The judge's "difficulty" was well founded. The hospital records on which the doctors' letters submitted in the civil case were based were as available to Williams before trial as they had been to the victim's widow. Therefore, the motion for a new trial was properly denied.

Given that conclusion, we need not address the Commonwealth's other arguments concerning Williams's new trial motion. We observe, however, that these arguments are not without substance, for even if the evidence proffered by Williams was newly discovered, he would not be entitled to a new trial by virtue of that fact alone; he also would have to establish that at another trial the new evidence probably would be a real factor with a jury in reaching a decision. *Commonwealth* v. *Grace, supra* at 306. *Commonwealth* v. *Medina*, 380 Mass. 565, 576 (1980). *Davis* v. *Boston Elevated Ry.*, 235 Mass. 482, 496 (1920). *Commonwealth* v. *Markham*, 10 Mass. App. Ct. 651, 654 (1980). That seems unlikely, since a jury would not be warranted in considering evidence that the victim's wounds were negligently treated unless there also was evidence that that treatment was the only cause of the victim's death. We have said that "[i]f a person inflicts a wound with a deadly weapon in such manner as to put life in jeopardy, and death

follows as a consequence of this felonious and wicked act, it does not alter its nature or diminish its criminality to prove that other causes cooperated in producing the fatal result." *Commonwealth* v. *Fernette*, 398 Mass. 658, 668 (1986), quoting *Commonwealth* v. *Hackett*, 2 Allen 136, 142 (1861). *Commonwealth* v. *McLeod*, 394 Mass. 727, 744-745 & n.21, cert. denied sub nom. *Aiello* v. *Massachusetts*, 474 U.S. 919 (1985). See *Commonwealth* v. *Rhoades, supra* at 823 n.12. It is at least doubtful that the evidence on which Williams relies would affect the result at a new trial.

The defendant Mays asserts four errors, the first of which is that the judge improperly denied his pretrial motion, followed by requests during trial, that his trial be severed from that of Williams. Rule 9 (d) (2) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 860 (1979), provides: "A motion of the defendant for relief from prejudicial joinder shall be in writing and made before trial and shall be supported by an affidavit setting forth the grounds upon which any alleged prejudice rests, except that a motion for severance may be made before or at the close of all the evidence if based upon a ground not previously known." Mays did not comply with the rule. He did not support his pretrial motion with an affidavit. Furthermore, no contention is made that during the course of the trial he asserted a ground for severance that had been unknown previously. For these reasons alone, the judge did not err by denying severance. In addition, even if Mays had complied with rule 9 (d) (2), severance was not required. The trial of Mays and Williams together did not create the unfairness to either one that moved us to conclude in *Commonwealth* v. *Moran*, 387 Mass. 644, 651-661 (1982), that severance was required. In this case, Mays's and Williams's defenses were not "mutually antagonistic and irreconcilable" as they were in *Moran. Id.* at 659. Here, it did not appear, as it did in *Moran*, that "each defendant would attempt to escape conviction by blaming the other," nor did it appear that the jury would hear any extrajudicial statement by Williams inculpating Mays. *Id.* at 660. Nothing more appears than that Mays might have adopted a different trial strategy and might have had a better

chance of acquittal had he been tried alone. Those considerations do not justify severance. *Id.* at 659.

Mays's second claim of error is that his Fourteenth Amendment due process rights were violated as a result of the denial of his motion to suppress evidence that a witness, John Laderoute, had identified him out of court as one of the robbers. Also, based on the contention that that identification resulted from an impermissibly suggestive one-on-one confrontation, the defendant argues that the judge erred by permitting Laderoute to identify him at trial. After a hearing on the motion to suppress, the judge found that on March 4, 1981, at about 5 P.M., Laderoute and his mother walked across a parking lot which was adjacent to the package store where the robbery occurred and was located at the corner of Gorham and Corbett Streets. As they passed the door to the store, Laderoute saw a tall, black man come out from the door, look around on Corbett Street, "go and look up and down Gorham Street," and then go back into the store. Laderoute at first thought this man was a friend of his and looked at him for about eight seconds. Laderoute and his mother continued walking, and then Laderoute saw the same man and a short, stocky, black man come out of the store. The short man's head and face were covered with a nylon stocking which distorted his features. Laderoute looked at both of the men. He observed that the tall man, subsequently identified as Mays by the police, had large, brown rimmed, tinted eyeglasses, was about six feet two inches tall, was wearing a white stocking cap, and had facial hair. He saw that the shorter man was carrying what appeared to be a butcher knife with blood on it and was wearing a brown and orange jacket.

The judge found that Laderoute continued to watch the two men as they approached and passed him jogging down Corbett Street. Laderoute saw the faces of both men for at least ten seconds, and saw both of them together for at least twenty seconds. Laderoute then went into the package store and made some observations, discussed below, until the police arrived. Laderoute told the police what he had seen. The officers left the package store and drove through the neighborhood until

they saw and apprehended two men fitting Laderoute's description of the men he had seen. The two men arrested were Mays and Williams.

One of the officers returned to the package store and said to Laderoute in substance, "I think we got the guys. Can you identify them?" Laderoute replied in substance, "I could identify them if I saw them." The officer then drove Laderoute to the place of the arrest. Mays and Williams were handcuffed and were in the presence of at least four uniformed police officers and two police automobiles. As the cruiser in which Laderoute was seated came near the scene, Laderoute saw the two men and exclaimed without prompting, "That's them. Get me the hell out of here." The officer stopped the cruiser and said, "Are you sure? Take a good look." Laderoute complied and said, "That's definitely the same men. Get me out of here." Laderoute was sure of his identification of the two men. No more than five minutes had elapsed from the time Laderoute first observed the two men and the time he confronted them after their arrest.

The judge concluded that the showup identification was not impermissibly suggestive. We agree. The defendant vigorously argues the suggestiveness of the extrajudicial identification. Surely, it cannot be denied that the showup was highly suggestive. That is characteristic of showups. But, in the circumstances of this case, it was not impermissibly so. "We have repeatedly held that due process rights are not violated when police arrange a one-on-one confrontation between the victim and a suspect promptly after a criminal event occurs." *Commonwealth* v. *Harris*, 395 Mass. 296, 299 (1985). *Commonwealth* v. *Leaster*, 395 Mass. 96, 102-105 (1985). It is immaterial that the identifying witness is not also a victim. *Commonwealth* v. *Storey*, 378 Mass. 312, 317-320 (1979), cert. denied, 446 U.S. 955 (1980). "The procedures are 'justified by the need for efficient investigation in the immediate aftermath of crime . . . . To have the witness view the suspect while his recollection or mental image of the offender is still fresh, before other images crowd in or his attempts to verbalize his impressions can themselves distort the original picture,

provides the witness with good opportunity for an accurate identification. . . . A further consideration is that prompt confrontation yielding a negative result, besides freeing the innocent, informs the police that a possible predisposition on their part is or may be in error and releases them quickly to follow another track.' (Citations omitted.) [*Commonwealth* v. *Barnett*, 371 Mass. 87, 92 (1976), cert. denied, 429 U.S. 1049 (1977)]." *Commonwealth* v. *Leaster, supra* at 103. The judge did not err in denying the motion to suppress the out-of-court identification. It follows that the in-court identification was not tainted and that its admission in evidence was not error.

Mays's next claim of error focuses on the admission in evidence at the trial of certain statements made by the victim. There was evidence at trial that substantially paralleled the judge's findings in connection with the defendant's motion to suppress identification evidence. We have recited those findings above, including the fact that, after Laderoute saw Mays and Williams jog down Corbett Street, Laderoute went into the package store. There was evidence at trial that in the store Laderoute found the victim covered with blood and mumbling into a telephone. Laderoute took the telephone, and the victim said, "Why did they cut me? I gave them all the money. Why did they stab me?" After quickly checking outside to see whether the police had arrived, Laderoute went back into the store and asked the victim what had happened. The victim responded that two black men had entered the store and brought a six-pack of beer up to the front, at which point one of them jumped over the counter and asked him for money. He stated that he gave them the money and hit the alarm, but then someone started punching him and stabbing him with a knife. Laderoute testified that at first he could not understand what the victim was saying, but that the victim then calmed down and his speech became clearer.

The judge conducted a voir dire to determine the admissibility of Laderoute's testimony concerning the victim's statements. He found that no more than two minutes had elapsed from the time Laderoute observed the defendants leaving the store to the time of the challenged statements, and that no

more than three minutes had elapsed between the stabbing and the statements. He also found that the victim was injured and in shock. He concluded that the statements were admissible as spontaneous utterances.

Mays contends that, in light of evidence that the victim was in control of his faculties when he made the statements, that he was able to telephone the police, that he had calmed down and had stopped mumbling, and that he made his statements in response to Laderoute's inquiries, the judge abused his discretion in admitting the statements. We do not agree. "With respect to spontaneous utterances the guiding principles have been stated — and in our view correctly — by Prof. Wigmore: 'The utterance must have been before there has been time to contrive and misrepresent . . . . It is to be observed that the statements need not be strictly contemporaneous with the exciting cause; they may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and to be dissipated. . . . [T]here can be no definite and fixed limit of time. Each case must depend upon its own circumstances.' Wigmore on Evidence (3d ed.) [1940] § 1750. . . . The trial judge in determining whether an utterance meets the tests of admissibility ought to be given broad discretion. . . . [A]nd only in clear cases . . . of an improper exercise of discretion should his ruling be revised." *Commonwealth* v. *Puleio*, 394 Mass. 101, 104-105 (1985), quoting *Rocco* v. *Boston-Leader, Inc.*, 340 Mass. 195, 196-197 (1960). See *Commonwealth* v. *Rivera*, 397 Mass. 244, 248 (1986). Furthermore, a statement made in response to a question may be spontaneous within the rule. *Commonwealth* v. *Hampton*, 351 Mass. 447, 449-450 (1966). The judge's findings were supported by the evidence and they fully justify admitting the challenged evidence pursuant to the spontaneous utterance rule.

Lastly, we briefly address Mays's contention that he was entitled to a required finding of not guilty of armed robbery while masked. The contention is entirely without merit. The case against Mays was tried on a joint enterprise theory, which holds that "one who aids, commands, counsels, or encourages commission of a crime while sharing with the principal the

mental state required for the crime is guilty as a principal. . . . The jury may infer the requisite mental state from the defendant's knowledge of the circumstances and subsequent participation in the offense." (Citations omitted.) *Commonwealth* v. *Soares*, 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979). There was ample evidence that Williams robbed the victim while armed with a knife and while masked. Mays does not contend otherwise. Furthermore, applying our usual standard of review, *Commonwealth* v. *Chappee*, 397 Mass. 508, 519 (1986); *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979), we conclude that the evidence set forth in our discussion of the other issues in this appeal is more than sufficient to warrant the jury's finding that Mays participated in Williams's conduct, fully sharing his criminal intent, and with full awareness of all the relevant circumstances.

With respect to Williams's conviction of murder in the first degree, consistent with our obligation under G. L. c. 278, § 33E (1984 ed.), we have considered the entire record, and we are satisfied that the interests of justice would not be served by our granting the defendant Williams relief.

*Judgments affirmed.*