COMMONWEALTH vs. VANCE CHOTAIN.

No. 90-P-1177.

Hampden. May 13, 1991. - September 5, 1991.

Present: BROWN, SMITH, & GREENBERG, JJ.

*Burglary. Breaking and Entering. Practice, Criminal*, Instructions to jury.
*Error*, Harmless. *Identification.*

At the trial of an indictment charging breaking and entering a dwelling
house in the nighttime with the intent to commit a felony therein, it
was error for the judge to suggest in his instructions to the jury that the
elements of the charge had been proved and that identification was the
only material issue [338-340], and, where the defendant did not con-
cede that all of the elements had been proved, the error could not be
considered harmless [340-341].
At a criminal trial, the judge properly admitted evidence of a witness's
prompt, unequivocal recognition of the defendant in a one-on-one
"showup" at a hospital shortly after the alleged crime. [341-342]

INDICTMENT found and returned in the Superior Court De-.
partment on January 13, 1989.

A pretrial motion to suppress evidence was heard by *Ray-
mond R. Cross*, J., and the case was tried before him.

*Carol A. Donovan*, Committee for Public Counsel Ser-
vices, for the defendant.

*Elizabeth Dunphy Farris*, Assistant District Attorney, for
the Commonwealth.

GREENBERG, J. The defendant was convicted on an indict-
ment charging breaking and entering a dwelling house in the
nighttime with the intent to commit a felony (G. L. c. 266,
§ 15).[1] His appeal centers on two alleged errors of the trial
judge: (1) instructions which the defendant claims invaded

[1]The jury acquitted the defendant on an indictment for assault by means
of a dangerous weapon (G. L. c. 265, § 15B) on the person of Richard
Blais, an occupant of the dwelling house.

the province of the jury's fact-finding function, thereby depriving him of a fair opportunity to be convicted only upon proof beyond a reasonable doubt; and (2) the denial of his motion to suppress testimony of the sole identification witness. Review of the record shows that the disputed portions of the judge's charge were erroneous and require reversal.

We recount the criminal episode from which the indictments arose. Richard Blais, the victim, lived in a single family dwelling in Holyoke with his wife and children. At 3:30 A.M. on November 10, 1988, he was awakened by a commotion on his enclosed front porch, just outside his bedroom window. Blais peered through the window and, aided by the adjacent street lights, saw two intruders, one standing in the corner of the porch and the other, wearing a beige, waist-length jacket, standing on the porch with his back to the bedroom window. Blais quickly dressed and armed himself with a self-fashioned weapon, a wooden table leg which he kept beneath his bed. Leaving his home through a rear door, Blais circled to the front, but the two men were nowhere in sight. His porch door was ajar.

Blais walked down the street and noticed a neighbor's porch light go on and off. In investigating the situation, Blais approached the neighbor's house and was confronted by the man in the light jacket who had been on his porch moments before. A short fracas ensued. Using the table leg as a club, Blais managed to subdue his adversary with a blow to the left temple. The intruder broke loose and fled with Blais behind him. After about a hundred yards, Blais abandoned the chase and then circled the general vicinity in his car. He stopped a Holyoke police officer to report the incident. He told the officer that the intruder was a slender, possibly Hispanic man in his twenties, wearing a beige jacket and a dark hat. Blais brought the police back to his neighborhood, where two police officers searched the area surrounding the two houses with flashlights. After locating a screwdriver lying on the ground near the neighbor's porch, the officers resumed their patrol, and Blais returned home.

Ten minutes later, Blais received a telephone call from the police informing him that a man with a head injury was being treated at Holyoke Hospital. The officer, believing the injured man to be the intruder at Blais's house, asked Blais to come to the hospital to identify him. When Blais arrived at the hospital, two officers walked a man through a room for Blais to view. Blais noted that the man had a large bald spot and stitches on his head and was wearing the same light beige jacket as the man with whom he had struggled. Blais told the police captain in charge: "Yea, that's the guy right there."

In early December, 1988, Blais was standing in a corridor in the Holyoke District Court where the defendant's probable cause hearing was to be held. He recognized the defendant (now clean shaven — Blais thought he had a beard before) standing among a few other people before the officers pointed the defendant out to him.

Although he testified to his out-of-court identifications, Blais was unable to make an in-court identification.

1. *The judge's charge.* During the course of his instructions, the judge, in laying out the elements of the crimes for which the defendant was indicted, stated to the jury on three separate occasions that the Commonwealth's evidence on the burglary indictment had carried the day. First, after properly charging that it was the jury's exclusive province to determine the facts, the judge added:

> "Now, in order to properly discharge your duty to decide what the facts are — that sometimes is not an easy task to decide the central issue in this case. One of the issues, and I don't think it's an essential issue, but it is an issue: Was there a burglary? Was there a breaking? That is, was there a breaking and entering in the nighttime the dwelling house with the intent to commit a felony therein? And was there an assault and battery by means of a dangerous weapon? Those are the issues in the case, but, really, the main issue is, is this [d]efendant one of the perpetrators of those crimes?

Was he there? That's the question in your minds. Was he there?"

Later, the judge again played on this theme when, in instructing on the elements of burglary, he gave his own rendition of the evidence relevant to the charge:

"Now, the testimony, as I recall by Mr. Blais, was there was someone on his porch, and that he usually kept the door locked to the porch . . ., and here was someone on the porch, and, of course, that's part of the dwelling, so I think — of course, it's up to you, and it's your memory of the testimony that controls — but I don't think you need delay too long on the elements of the crime, breaking and entering in the nighttime with the intent to commit a felony, and that means that the breaking and entering must take place in the nighttime."

Any doubt remaining as to the judge's subjective evaluation of the breaking and entering indictment was dispelled when, following his charge on the elements of burglary, the judge remarked: "Now, I don't think you have to spend, really, too long on the essential elements of burglary, but the issue, real issue, is, who was the perpetrator? Was this [d]efendant the one?"

The defendant argues on appeal that the judge impermissibly injected his personal opinion as to the strength of the Commonwealth's evidence and thereby diluted the prosecution's burden of proving each essential element of the offense beyond a reasonable doubt. We agree.

A judge may both instruct a jury as to what verdict is appropriate in the event that certain facts are found, see *Commonwealth* v. *Boyd*, 367 Mass. 169, 186 (1975), and assort the various issues given to him for decision. *Commonwealth* v. *Bettencourt*, 361 Mass. 515, 520-521 (1972), and cases cited. He may not, however, direct a verdict of guilty unless there has been an agreement as to all facts material to the proof of the crime charged. *Commonwealth* v. *Moniz*, 336 Mass. 178, 180 (1957). *Commonwealth* v. *Stracuzzi*, 30

Mass. App. Ct. 161, 162-163 (1991). While in this case the judge's instructions fell short of actually directing a guilty verdict, they nonetheless may have had that effect by force of the judge's having made known to the jury his own conclusions. See *Commonwealth* v. *Wanderlick*, 12 Mass. App. Ct. 970, 972 (1981) ("The influence of the trial judge on the jury is necessarily and properly of great weight and his lightest word or intimation is received with deference, and may prove controlling"). From the judge's repeated suggestions to the jury that key elements of the burglary had been proved and that identification was the only material issue, the jurors might have understood that the defendant had yielded on the breaking and entering elements of the crime. As such, his comments were erroneous. See *Commonwealth* v. *Hebert*, 379 Mass. 752, 755 (1980); *Commonwealth* v. *Cote*, 5 Mass. App. Ct. 365, 369-370 (1977).

Having ascertained error in this regard, our next inquiry must be whether the error is such that it requires us to reverse the conviction. We are not persuaded by the Commonwealth's contention that, because the case was tried solely on the issue of identification, the judge's comments do not warrant reversal. First, although defense counsel focused on a theory of mistaken identification, she never conceded that a burglary had occurred at the Blais residence. Compare *Commonwealth* v. *Gallison*, 384 Mass. 184, 193 n.5 (1981); *Commonwealth* v. *Mitchell*, 12 Mass. App. Ct. 354, 356-357 (1981). In fact, at the close of the prosecution's case, the defense moved for a required finding of not guilty on the breaking and entering in the nighttime charge, arguing that there was insufficient evidence that the porch door had been opened.[2] Second, unlike each of the cases cited by the Com-

***

[2]To find a breaking, there must be evidence that the defendant moved to a material degree something that barred his way. *Commonwealth* v. *Tilley*, 355 Mass. 507, 508-509 (1969). *Commonwealth* v. *Burke*, 392 Mass. 688, 690 (1984). *Commonwealth* v. *Purcell*, 19 Mass. App. Ct. 1031, 1032 (1985). While Blais's testimony was likely adequate to carry the question to the jury, it is conceivable that some jurors may have hesitated to convict on evidence which showed little in relation to the movement of the porch door. Entering in the nighttime without a breaking is proscribed by G. L.

monwealth, defense counsel here promptly and specifically objected to the judge's instructions.[3] Because the defendant did not concede that the elements of burglary had been proved, the judge's suggestion that they tarry no longer than necessary to reach the identification issue cannot be considered harmless. See *Commonwealth v. Repoza*, 400 Mass. 516, 522 n.7 (1987); *Commonwealth v. Skinner*, 408 Mass. 88, 98 n.5 (1990).

2. *The one-on-one identifications.* Since the issue will almost assuredly arise at any new trial on this indictment, we consider the defendant's argument that the trial judge erred in denying the defendant's motion to suppress Blais's identifications of him at the hospital and in the corridor of the Holyoke District Court.

The defendant argues that the hospital identification should have been excluded because it was rendered unreliable by suggestive police procedures. See *Commonwealth v. Moon*, 380 Mass. 751, 756-759 (1980). We disagree. While showup identifications are generally disfavored, see *Commonwealth v. Powell*, 10 Mass. App. Ct. 57, 60-61 (1980), they have been allowed where, as here, they occur shortly after the alleged crime. *Commonwealth v. Williams*, 399 Mass. 60, 67-68 (1987). *Commonwealth v. Jones*, 25 Mass. App. Ct. 55, 59-60 (1987), and cases cited. Although the officers' statements to Blais, made prior to the hospital showup, that the man he would see had a gash on his head in the same place that Blais had struck the intruder, contained some inherent suggestiveness, see, e.g., *Commonwealth v. Leaster*, 395 Mass. 96, 103 (1985), we are convinced that Blais's opportunity to observe his assailant at the time of the incident and his prompt, unequivocal recognition of the de-

---

c. 266, § 17, but the defendant was not indicted under this provision; nor were the jury charged that entering without breaking was a lesser included offense of breaking and entering.

[3]Acknowledging that the case was tried primarily on the identification issue, defense counsel nevertheless emphasized to the judge that it was "still obviously incumbent on the jury to find the elements of each of the crimes;" while objecting to the judge's "minimizing the jury's requirement to evaluate the elements of the crime."

fendant at the hospital attest to the reliability of his identification. *Id.* at 104-105. See also *Commonwealth* v. *Barnett*, 371 Mass. 87, 93-94 (1976); *Commonwealth* v. *Lifsey*, 2 Mass. App. Ct. 835 (1974); *Commonwealth* v. *Hicks*, 17 Mass. App. Ct. 574, 578-579 (1984); *Commonwealth* v. *Riley*, 26 Mass. App. Ct. 550, 554 (1988).[4]

*Judgment reversed.*

*Verdict set aside.*

---

[4]Because we conclude that the hospital identification of the defendant was reliable and not unduly suggestive, we need not address the defendant's remaining argument that the subsequent extrajudicial identification of the defendant in the corridor of the Holyoke District Court was tainted by the hospital confrontation. *Commonwealth* v. *Harris*, 395 Mass. 296, 300 (1985). *Commonwealth* v. *Gagne*, 27 Mass. App. Ct. 425, 428-429 (1989).