Cowin, J.
The defendant, Roger Wixon, has been charged in two indictments with unarmed robbery (G.L.c. 265, §19). The defendant has filed a motion to suppress identifications made of him by two victims during a one-on-one identification procedure that took place shortly after the robbery. A hearing was held on said motion on February 25, 1997 at which three witnesses testified: one of the victims, Ms. Sofia Goldberg; and two Milton Police officers: Officer Michael Mason and Officer Kevin Swan.
After the hearing and an evaluation of the evidence presented, including the credibility of the witnesses, I make the following findings and rulings.
FINDINGS OF FACT
On November 25, 1995 at approximately 6:20 p.m., the Belle Visage Beauty Spa located in Milton was robbed. Ms. Sofia Goldberg, the owner of the beauty salon, identified the robber as the defendant Roger Wixon. Wixon had a five- to ten-minute conversation with Ms. Goldberg before robbing the shop. When the defendant first entered the store, Ms. Goldberg was approximately ten to fifteen feet away from him. During the time she was speaking with him she got as *596 close to him as four to five feet and was looking at his face the entire time. Ms. Goldberg wears glasses and was wearing glasses at the time. During the robbery and the conversation with the defendant, the store was very well lighted. Ms. Goldberg had no difficulty seeing Wixon. She described the defendant as a male in his late 20s to early 30s, 5’6" or 5’7" tall with a “nice build, not heavy, ” dirty blonde hair and wearing a red T-shirt and a denim jacket. Following the robbery, Ms. Goldberg called the police and gave them the above description. During the robbery, there was a second person present in the store, one Boni Winick, the receptionist.
Immediately after the robbery, the Milton Police responded to the store. Ms. Goldberg told them the direction in which the defendant had fled. The police told Ms. Goldberg to stay in the store and that someone would come along shortly to take a report from her. Ms. Goldberg remained in the store along with Ms. Winick.
Shortly thereafter, at approximately 6:45 p.m., another police officer came to the store, Officer Michael Mason. Officer Mason asked Ms. Goldberg and Ms. Winick if they could identify the suspect who had just robbed the beauty salon. Both women indicated they could do so.
Officer Mason stated that the police had stopped a person whom the police believed to be the man who had robbed the shop. He asked the women to go to identify the suspect. Both women asked if they would have to testify in court and were very nervous about having to do so. The officer said the women probably would not have to testify but he did not know for certain. The women also asked the officer where the defendant was at the moment and how he had gotten there. Officer Mason explained to the women that with Ms. Goldberg’s description of the robber and her information about his direction of flight, the police had inquired of people in the vicinity who had seen the suspect running. These people had further directed the police and eventually the police had located the defendant crouched behind a car.
Officer Mason then transported Ms. Goldberg and Ms. Winick in his cruiser to the site where the defendant had in fact been stopped by the police. He told them that they would follow a procedure in which he would take each of them separately to view the person who had been stopped. The officer said he would put his high beams on so that the defendant could not see into the car and then he would ask if the person the women saw was the person who had robbed the beauty shop.
In order to separate the women during the identification procedure, when he got around the comer from the site where the defendant was being held, Officer Mason had Ms. Goldberg get out of the cruiser and wait on the street (in the company of another police officer) while he took Ms. Winick to make an identification. The officer then proceeded around the comer with Ms. Winick in the back of the cruiser. Ms. Winick identified the defendant as the robber.[1] Officer Mason returned Ms. Winick to the place where Ms. Goldberg was standing. Ms. Winick alighted from the cruiser and Ms. Goldberg entered the cruiser. There was no conversation between the two women concerning the identification.
Officer Mason then drove Ms. Goldberg to the place where the defendant was standing. The officer put his high beams on the defendant and asked Ms. Goldberg if she could identify anyone in front of the cruiser. At that point, the defendant was standing lit by the high beams and by the street lights. He was handcuffed although Ms. Goldberg cannot now remember whether he was handcuffed. Standing next to the defendant was one plainclothes officer. Two or three officers were standing approximately ten to fifteen feet away from the defendant.
As Officer Mason’s cruiser approached the defendant, he asked Ms. Goldberg if she could identify him as the person who had robbed the store. When Ms. Goldberg saw the defendant she immediately said: “Yes, that’s him.” This was at approximately 6:50 p.m., about one-half hour after the robbery. Ms. Goldberg became hysterical and started to cry upon seeing Wixon. She was not hysterical or crying before she saw Wixon.
DISCUSSION
The burden is on the defendant to establish by a preponderance of the evidence that a given confrontation was so unnecessarily suggestive as to give rise to a substantial likelihood of mistaken identify. Commonwealth v. Johnson, 420 Mass. 458 (1995); Commonwealth v. Botelho, 369 Mass. 860, 867 (1976); Commonwealth v. Venios, 378 Mass. 24 (1979). The test is whether, in light of the “totality of the circumstances,” the identification procedure was unnecessarily suggestive of the defendant. Commonwealth v. Santos, 402 Mass. 775, 781 (1988). Though one-on-one confrontations are inherently suggestive, Commonwealth v. Powell, 10 Mass.App.Ct. 57, 60-61 (1980), “due process rights are not violated when police arrange a one-on-one confrontation between the victim and suspect promptly after a criminal event occurs." Commonwealth v. Williams, 399 Mass. 60, 67 (1987). The procedure is justified by the need for efficient investigation in the immediate aftermath of crime and provides a good opportunity for an accurate identification while the witness’ recollection or mental image of the offender is still fresh. Commonwealth v. Williams supra, at 67; Commonwealth v. Coy, 10 Mass.App.Ct. 367, 371 (1980).
In this case, the one-on-one confrontations occurred about one-half hour after the crime. Such a time period is permissible for a show-up. See, for example, Commonwealth v. O'Loughlin, 17 Mass.App.Ct. 972 (1984) (show-up is permissible approximately three hours after attack): Commonwealth *597 v. Jones, 25 Mass.App.Ct. 55 (1987) (show-up is permissible two and one-quarter hours after crime).
The fact that the defendant was in the company of police officers does not render the identifications unduly suggestive. See Commonwealth v. Mofett, 383 Mass. 201 (1981), nor does the fact that the police had indicated that they had someone who matched the description of the defendant. See Commonwealth v. Perretti, 20 Mass.App.Ct. 36 (1985); Commonwealth v. Harris, 395 Mass. 296 (1985). “The witness knows he would not be asked to make an identification unless the police had reason to suspect the defendant’s involvement.” Commonwealth v. Hicks, 17 Mass.App.Ct. 574, 583 (1984); Commonwealth v. Perretti, supra, at 41-42 (1980).
Here, however, the police went too far. Although it is not unnecessarily suggestive for the police to indicate that they think they “got the guy” (see Commonwealth v. Williams, supra at 67), in this case the police added a description of how they had come to locate the suspect. Officer Mason not only stated to Ms. Goldberg and Ms. Winick that the police had a suspect whom the police believed was the person who had robbed the store, but he was also advocating for the police position that the suspect was indeed the robber. Officer Mason told the two women that the police had located the suspect by providing his description to bystanders who had in turn pointed out the path that this suspect had taken. The officer even provided the information that the police had found the suspect crouched behind a car.
This information provided by the police supported a conclusion that the police in fact had the right person and distinguishes this case from other cases in which identifications have been upheld as not impermissibly suggestive. Cf. for example, Commonwealth v. Chotain, 31 Mass.App.Ct. 336, 341-42 (1991). In Chotain, a one-on-one identification was not excluded despite the fact that police officers had stated to the victim before the show-up that the man the victim would see had a gash on his head in the same place in which the victim had struck the intruder. The Court concluded that this police statement contained some “inherent suggestiveness” but nevertheless that the victim’s opportunity to observe the assailant at the time of the crime made the identification reliable. In the Chotain case, the victim knew that the person he would be seeing would have a gash on his head, for the victim had inflicted awound on the suspect. Thus, the victim expected to see a man with a gash on his head. The present case is distinguishable because the police in the present case added to Ms. Goldberg’s and Ms. Winick’s knowledge about the suspect. The police statements could have had the effect of suggesting to the victims that the man the police had apprehended was indeed the assailant.[2] For this reason, I conclude that the defendant has met his burden of showing that in the totality of the circumstances the identifications were so unnecessarily suggestive as to deny the defendant due process of law. Commonwealth v. Johnson, supra, at 463.[3]
ORDER
For the foregoing reasons, the defendant’s motion to suppress the identifications of the defendant made on November 25, 1995 is ALLOWED.

Although a motion to suppress was filed relating to the identification by both victims, the only identification victim present was Ms. Sofia Goldberg. The Commonwealth represented that the second victim, Ms. Boni Winick, was in Florida. The defendant, of course, bears the burden of showing that the identification procedure was unnecessarily suggestive. See Discussion Section infra Any findings based on Ms. Winick’s actions are based on evidence admitted without objection.

The Court does not suggest that this was the intent of Officer Mason’s answer to Ms Goldberg’s inquiry. Nevertheless, this was the effect of the information he conveyed. Officers conducting identification procedures would be well-advised to do no more than request that the victim look at a person and see if they can identify that person.

Further, the Supreme Judicial Court has now rejected the “reliability test” of Manson v. Brathwaite, 432 U.S. 98 (1977), see Commonwealth v. Johnson, 420 Mass. 458 (1995), the test that was used by the Appeals Court in Chotain.